# STATE OF CONNECTICUT *v.* MICHAEL MARZBANIAN

## APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CR 15-1477

Argued June 10—decided October 16, 1963

*Charles G. Karanian* and *John D. Bagdasarian,* of New Britain, for the appellant (defendant).

*James R. Burton,* assistant prosecuting attorney, for the appellee (state).

KOSICKI, J. The information charged the defendant with the crime of breach of the peace by assault in violation of § 53-174 of the General Statutes.[1]

---

[1] The facts evidently accepted by the jury as proven show that there was a battery as well as an assault. Section 53-174 specifies, among other things, that "assaulting or striking another" constitutes a breach of the peace. The battery necessarily included the assault charged in the information. The court instructed the jury that if they found the assault proved, they must further find that the assault disturbed the peace and tranquility of the community before the defendant could be found guilty. This charge was more favorable to the defendant than he was entitled to have. An assault or striking is a violation of the statute even though committed in private. The public peace is considered broken because such acts against individuals, as well as other proscribed offenses such as threatening, traducing, quarreling, challenging and mocking, tend to provoke reprisals and incite others to break the peace. See *State* v. *Cantwell,* 126 Conn. 1, 7; *Malley* v. *Lane,* 97 Conn. 133, 138.

He was acquitted by the jury on the ground of insanity and was thereafter committed by the court to the Connecticut Valley Hospital pursuant to § 54-37.[2] In his appeal, the defendant assigns error in the failure to correct the finding as requested; in certain rulings on evidence; in the overruling of an objection by the defendant to certain remarks of the prosecutor in his closing argument; in the denial of the defendant's motion to set aside the verdict "because the defendant was not proven guilty beyond a reasonable doubt"; in the refusal to instruct the jury as requested by the defendant; and in the charge to the jury on the matter of insanity.

The state has raised the question whether, in view of the nature of the verdict, an appeal lies. No motion to dismiss was filed but, since the objection

---

[2] "Sec. 54-37. DISPOSITION OF ACCUSED ACQUITTED ON THE GROUND OF INSANITY. The superior court, the court of common pleas or the circuit court, before which any person is tried on any criminal charge and acquitted on the grounds of insanity or dementia, may order such person to be confined in any of the state hospitals for mental illness until such time as, in the judgment of the superintendent of such hospital, such person is sufficiently recovered to be released, unless some person undertakes before such court, under bond to the state, to confine such person in such manner as such court orders; and such court shall appoint an overseer for such person, if he has any estate, with the same powers and duties as conservators appointed by courts of probate, such overseer giving suitable bond to the state, conditioned for the faithful performance of his trust; and the expense of confinement, support and treatment of any such person shall be computed and paid in accordance with the provisions of section 17-205 and chapter 308."

Public Acts 1963, No. 642, § 65, eliminated the words "the court of common pleas" from the statute. The early precursor of this statute, passed in 1793 and applicable only in cases of murder and manslaughter, provided for detention in jail during insanity and enlargement on order of court. Statutes, 1808, pp. 386, 387, §§ 19, 20; Statutes, 1838, p. 350, §§ 4, 5; Statutes, 1849, p. 438, §§ 14, 15; Statutes, 1854, p. 612, §§ 14, 15. In 1865, these provisions were extended to cover all criminal charges. Rev. 1866, p. 288, §§ 243, 244. Since 1870, confinement could be ordered only in a state mental hospital. Rev. 1875, p. 536, §§ 4, 5.

goes to the jurisdiction of this court to entertain the appeal, we have permitted the appellant and appellee to file supplemental briefs on the sole question whether an accused may avail himself of the process of appeal where the finding on the issues of fact was "not guilty on the ground of insanity."

The state maintains that an appeal lies only from a judgment and that, in a criminal case, the sentence is the judgment against the accused. *State* v. *Vaughan,* 71 Conn. 457, 458. Since the defendant was acquitted of the crime charged by reason of insanity, and his commitment was to a state hospital under a nonpenal statute which provides for enlargement without further court action when, "in the judgment of the superintendent of such hospital," the defendant has sufficiently recovered to be released, no reviewable issue, it is argued, can be presented on this appeal. With regard to the first point, it is not correct to say that because no sentence had been pronounced there is no final judgment from which an appeal may be taken. A judgment was rendered in this case, as it must be in every case which terminates in a finding after a trial on the facts; and it was the judgment as finally rendered which served as authority for the issuance of a mittimus for the confinement of the defendant in the state hospital. See *Barber* v. *Barber,* 15 Conn. Sup. 271, 273.

This somewhat restricted approach to the question presented does not meet the problem posed by the state. Granting that there was a final judgment, the precise question is whether from that kind of judgment an appeal may be taken. No authority has been cited on either side, in this jurisdiction or elsewhere, and such cases or comments as we have been able to find are spare and inconclusive. See, for example, *People ex rel. Peabody*

v. *Chanler*, 133 App. Div. 159, aff'd, 196 N.Y. 525; note, 25 L.R.A. (N.S.) 946; 14 Am. Jur., Criminal Law, § 41, p. 800, § 55, p. 809. Our statutes and rules of practice are silent on the subject, and the view may be urged that, since our statutory provisions pertaining to the disposition of persons found not guilty of crime because of insanity are remedial and not penal in nature, being designed for the protection of society and the individual alike, and are implemented by adequate means for the care, treatment, improvement and release of persons coming within their purview, an appeal, in the absence of express statutory provisions to that effect, will not lie. This view, as related to the remedy, finds impressive support in the adjudicated cases which hold that statutes such as ours (§§ 54-37 —54-39), allowing commitment without any further hearing on the question of present insanity and making available sufficient methods for securing release upon a showing of recovered sanity, are not unconstitutional by reason of denying the accussed his right to due process of law. See *People* v. *Dubina*, 304 Mich. 363, cert. denied, 319 U.S. 766; note, 145 A.L.R. 892. An acknowledgment, however, that due process has been observed is not tantamount to saying that the defendant's right of appeal has been taken away. Whether his release can be accomplished under the provisions of the cited statutes or through habeas corpus proceedings will not alter the record of judgment in the criminal case. In a case like this, the shadow of such a judgment, if unjustly reached, may conceivably cause more harm to the defendant's potential employment, social acceptance and future happiness than would a finding of guilt and the imposition of a sentence. We hold, therefore, that the defendant, on the claims of error specifically considered herein, is entitled to pursue his remedy of appeal. It does not follow

from this that the defendant had the right to be admitted to bail and to a stay of execution under Circuit Court Rules 7.12.2 and 7.12.3. These provisions apply only to appeals from a sentence. There was no sentence in this case. The statute under which the defendant was committed provides for an alternative to commitment to a state hospital by the furnishing of a bond by some person who undertakes to confine the defendant in such manner as the court may order. This is similar to the provision in § 17-203 pertaining to appeals to the Superior Court after a finding of mental illness by a court of probate. No such bond was offered or proposed in this case.

There is no error in the court's denial of the motion to correct the finding. The motion represents the defendant's version of the facts, which the jury by their verdict evidently rejected. "A finding in a jury case is not a statement of the facts which have been found proven; it is a statement of facts which, on the evidence, the jury might have found proven and which the parties claim were proven. *Quednau* v. *Langrish,* 144 Conn. 706, 708 . . . ." *State* v. *Testa,* 147 Conn. 90, 93. "[O]rdinarily the sole purpose of a finding in a jury case is to state the claims of the parties as to facts proven in order to present upon appeal claims of error on the trial in rulings or as to the charge of the court." Maltbie, Conn. App. Proc., p. 199. "In a jury trial, the finding merely sets forth facts claimed to have been proved. It does not establish the truth or existence of the facts stated therein but only that there was evidence tending to prove their existence." *State* v. *Holota,* 2 Conn. Cir. Ct. 45, 47.

The jury could reasonably have found the following facts: On October 8, 1961, a fire broke out in the home of the defendant and his elderly mother.

Roger Gaudio, the complaining witness, a newspaper photographer employed by the "New Britain Herald," went to the scene of the fire to cover it for his newspaper. At the time of his arrival, a crowd of spectators had gathered and policemen and firemen were already on the scene performing their duties. Donald Skinger, a sophomore at the Connecticut State Central College and an amateur photographer, reached the area of the fire before Gaudio. To get a better view of the burning building, Gaudio went to the rear of the premises. He was followed by Skinger, who wished to observe Gaudio's professional technique in photographing the fire. When Gaudio got to the rear of the Marzbanian house he noticed two women and a man watching the fire. The man was later identified as the defendant. As Gaudio was preparing to use his camera, he was approached by the defendant, who asked him what he was doing there. Gaudio said he was the Herald photographer and was taking pictures. He then glanced up at the second floor to focus his camera and without warning was struck a severe blow in the mouth by the defendant. Thirteen stitches were required to close the cut on Gaudio's lip, and his mouth and teeth were injured. The defendant had been on combat duty during World War II and as a result of his service was discharged with a 100 percent disability. At the time of the above occurrence he was still so disabled because of a condition of schizophrenia of the paranoiac type. Charles Karanian, one of the attorneys for the defense, has been acting as the defendant's conservator for a number of years.

The defendant challenges four rulings on evidence as being erroneous. One of these relates to the admission of a photograph of the defendant taken by Gaudio immediately after the attack on him. The photograph was admissible as part of the

res gestae, for the purpose of identifying the assailant and in corroboration of the testimony of Gaudio as to what had happened. The fact that it might have prejudiced the defendant by showing him in a menacing and unflattering attitude does not lessen its testimonial value. See, for example, *State* v. *Hanna,* 150 Conn. 457. This assignment of error is without merit.

On cross-examination of a detective of the New Britain police department, defense counsel sought to elicit information on the law of trespass as bearing on a supposed complaint to the police by the defendant against Gaudio. Clearly, the questions relating to the law of trespass were inadmissible, and there was no evidence of a complaint such as was suggested by counsel. The questions were outside the scope of the direct examination, were not claimed for any legitimate purpose, and were properly excluded. In further cross-examination of the same witness, defense counsel sought to obtain a copy of a purported statement given to the police by the defendant. The statement was part of the prosecutor's file. There was no error in the ruling of the court denying the defendant access to the statement. *State* v. *Pikul,* 150 Conn. 195, 202; *State* v. *Cocheo,* 24 Conn. Sup. 377. With regard to the final ruling assigned as error, no transcript of the remarks of the assistant prosecutor in his closing argument has been submitted, and therefore we cannot pass on their propriety. The brief statement that the remarks were directed toward medical aspects of the testimony pertaining to the defendant's mental condition does not suffice to support the charge of prejudice. The reference obviously was to evidence introduced by the defendant; this evidence was open to attack by the state.

The crux of the appeal is in the assignment of error aimed at the denial by the court of the motion

to set aside the verdict. The defendant has misstated his general assignment; he was not found "guilty," as the assignment reads, but "innocent by reason of insanity [sic]." The jury were instructed to return one of three possible verdicts: not guilty, guilty, or not guilty on the ground of insanity. The verdict arrived at in this case indicates that the jury, unless misled by an erroneous charge, concluded that the assault alleged in the information was committed by the defendant without justification or excuse, but that he was not criminally responsible for his act because of his insanity at the time the act was committed.

Although the motion to set aside the verdict was on its face inconsistent with the verdict rendered, we gather that it was directed to the verdict as it stood and was filed as the first step toward the defendant's appeal. The defendant does not seriously press the claim that the evidence was insufficient to support a finding that an assault had been committed, and our examination of the evidence makes it clear that such a claim would be untenable. The main contention of the defendant is that the verdict should have been set aside because of errors in the charge and the refusal of the presiding judge to instruct the jury in accordance with the defendant's requests. These requests related solely to the defenses of justification and excuse in using the amount of force the defendant did use against a trespasser under the circumstances which faced the defendant at the time. The court charged, in substance, that if the jury were to find that an assault had been committed but that, under the circumstances then present, the defendant was acting reasonably in protecting himself because of an honest apprehension of harm to himself or to his mother, who was nearby, and that the amount of force used was not greater than was reasonable

under the circumstances, then the assault was justifiable, and the verdict must be not guilty. The court further charged that if the jury found that Gaudio was a trespasser and the defendant, in protecting his property and home against intrusion, had asked him to leave and he did not leave, then the defendant would be justified in using reasonable force to evict Gaudio from the premises, and the reasonableness of the action of the defendant was to be judged in the light of the circumstances as they confronted him on that evening. Both charges were correct and fully covered the material portions of the defendant's requests.

In his exceptions to the court's instructions to the jury, the defendant claimed error because the court, instead of charging on the question of insanity, which the defendant disclaimed as a defense, should have charged "that the jury must place themselves in the position of the accused at the time this incident took place, that the accused finds a trespasser on the land and the person he finds on it puts him in a position, as it existed at that time, that he honestly believes under the circumstances that he was in apprehension of danger, whether it be because of a mental or other condition. If that is his honest belief, the jury must place themselves in the defendant's position at that particular time and that is the law, your Honor, and I feel that they should have been charged as such, whether it be a figment of imagination, whether it be from a situation existing because of the defense motivation on his part, that he is being picked on or anything else." A psychopathic condition short of inability to understand the nature and quality of the act done is no defense in a criminal prosecution. *State v. Davies,* 146 Conn. 137, 144; *State v. Donahue,* 141 Conn. 656, 662, 663. Furthermore, this erroneous statement of the law carries its own refutation. If

such were the law, each person accused of assault would be the judge of his own conduct; the jury would have to consider his subjective condition, examine his disposition, and evaluate his responses to outward events as influenced by qualities peculiar to himself and not necessarily conforming to the actions of a reasonable man doing what he honestly believes to be reasonable under the circumstances facing him. Justification or excuse for assault cannot be used as a cloak to cover an irascible temper, a violent disposition, ungovernable emotions, or erratic behavior.

The remaining exception is that the presiding judge erroneously charged the jury on the defense of insanity when the defendant expressly repudiated that defense. No objection is raised as to the correctness of the charge on insanity but only as to the propriety of including such a charge in the instructions to the jury. We are not concerned with what the defendant's intentions or motives might have been concerning defenses open to him but only with the correctness of submitting the questioned instructions on the basis of evidence introduced by the defendant. Marshal Banever, chief attorney for the veterans administration, was presented as a defense witness. He was asked to testify from the administration records concerning the defendant's combat service, his medical history and other matters obviously related to the defendant's lack of mental soundness. Although this inquiry was necessarily limited, the evidence which did go to the jury, upon the defendant's insistence, would, if accepted, tend to show that since 1945 the defendant had been suffering a 100 percent disability from a mental disorder caused by schizophrenia, paranoiac in character; that he had persecutory delusions; and that he was unable to manage his own affairs. In addition, the jury had the

benefit of the testimony of the defendant and the opportunity of observing his demeanor, of evaluating his statements with regard to their rational content or lack of it, and, generally, of weighing such evidence regarding his mental condition as had been presented and his own testimony and appearance on the witness stand.

All of this evidence was before the jury, and the presiding judge had no choice but to instruct them how to deal with it. The only legitimate purpose for which this evidence was admissible was in support of a defense of insanity. Such a defense may be interposed under a plea of not guilty, and no advance notice of it need be given to the prosecution. See *State* v. *Ward,* 49 Conn. 429, 436; *State* v. *Joseph,* 96 Conn. 637, 639. Sanity, of course, is presumed and does not have to be established before the state rests its case. Insanity is an affirmative defense, to be proved by the accused by a preponderance of evidence. *State* v. *Hoyt,* 46 Conn. 330, 337. The burden of proof, however, still remains on the prosecution to establish guilt beyond a reasonable doubt. *State* v. *Gargano,* 99 Conn. 103, 108; comment, "Criminal Law—Insanity—Burden of Proof—*Leland* v. *Oregon,* 343 U.S. 790 (1952)," 27 Conn. B.J. 127, 130. Expert medical testimony is not an essential requirement to prove insanity. Nor does expert testimony without refutation by the state constitute an admitted or undisputed state of facts which the jury must accept as proof. *State* v. *Kenyon,* 134 Conn. 43, 48. Had the defendant chosen to eliminate the issue of insanity from the jury's consideration, he could have moved that all the evidence on that point be stricken and disregarded by the jury. The court, without such motion addressed to its sound discretion, was not empowered to so instruct the jury. *Fuller* v. *Metropolitan Life Ins. Co.,* 68 Conn. 55, 63. The court could not

obliterate from the jury's attention evidence offered on behalf of the defendant for the only purpose for which it could properly be offered. The evidence, weak though it may have been, was for the jury to weigh. *State* v. *Buonomo,* 87 Conn. 285, 290. This assignment of error is without merit.

There is no error.

In this opinion DEARINGTON and KINMONTH, Js., concurred.