**Dell John CELANI, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–95–00972–CR.**

Court of Appeals of Texas,
San Antonio.

Feb. 12, 1997.

Michael Stephen Raign, San Antonio, for appellant.

Edward F. Shaughnessy, III, Assistant Criminal District Attorney, San Antonio, for appellee.

Before RICKHOFF, GREEN and DUNCAN, JJ.

DUNCAN, Justice.

Dell John Celani was charged with the murder of his mother, Juanita Celani. Following a bench trial on stipulated evidence, the trial court found Celani not guilty by reason of insanity and ordered him committed to Vernon State Hospital. In his sole point of error, Celani argues the trial court erred in denying his motion to suppress evidence seized by police during a warrantless search of the Celani home. We reject the State's argument that we are without jurisdiction over Celani's appeal because he was technically acquitted, rather than convicted, and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 22, 1976, Ann Nixon asked the police to come to the residence of her cousin, Juanita Celani. According to Mrs. Nixon, Mrs. Celani and her adult son, Dell John Celani, had not been seen for several days. Mrs. Nixon and two of Mrs. Celani's neighbors, Cecilia Gray and Jane Paisley, met Officers Anderson and Vargas at the house. The women told the officers that Mrs. Celani had not been seen or heard from since October 17, and it was very unusual for her not to contact them regularly or let them know if she left town. They also said her car was still in the garage, and they had tried knocking and leaving notes for her, all without response. Finally, Mrs. Nixon told the officers that Dell John Celani was mentally ill and had been in and out of the state hospital and other mental institutions.

After speaking with the three women, the officers knocked on Mrs. Celani's front and side doors, but there was no response. They then walked around the house to check its security, trying all the doors and windows. The front screen door was locked from the inside; the back door was closed but unlocked. One of the officers saw a lamp on in the house. "[B]ecause Mrs. Nixon and Mrs. Gray seemed extremely concerned over [Mrs. Celani's] welfare," the officers entered the house. Once inside, the officers saw a woman's bare feet sticking out from a hallway across the room. Approaching closer, they found Juanita Celani's body, covered with aluminum foil from waist to head. The walls of the house were splattered with blood, and there was blood in the bathroom and sink as well. The officers then systematically searched for a suspect or another body. During this search, the officers found a bloody pair of man's pajama pants and a bloody woman's housecoat with multiple cuts in the back. Finding neither a suspect nor

another body, the officers called EMS, a sergeant, and homicide detectives.

Sergeant Whitworth arrived first and immediately called for homicide detectives and crime lab technicians. He then instructed the officers to secure the scene and not touch anything. Whitworth later relinquished control of the scene to homicide detectives Ruiz, Wolfe, and Conrad and crime lab technician West. After pictures were taken, these officers unwrapped and inspected Mrs. Celani's body—her head was covered with a large plastic bag, and she had suffered approximately seven stab wounds in the chest and thirty-eight stab wounds in the back. Under the body, the officers found a kitchen knife, the six-and-one-half inch blade of which was bent in half. Ultimately, the police seized twenty-five pieces of evidence, including the bloodstained clothes, the knife, samples of the bloodstains from different rooms, a tape recorder, tapes, and a typewriter with a note in it.

Meanwhile, when Sergeant Whitworth returned to the police station, he discovered that Officer Lloyd Brown had checked the computer and found that Dell John Celani had been in police custody since October 19, when he had been arrested for public drunkenness and failing to identify himself. Officers Brown and Conrad then inventoried the contents of the suitcase Celani had been carrying when he was arrested. They found "clothing, nudie books, packages of glue, [a] yellow bathrobe with what appeared to be blood on it, and a man's shirt with what appeared to be blood on it." Celani refused, however, to answer the officers' questions. The ensuing investigation revealed that Celani's fingerprints were on the knife found under Mrs. Celani's body, the foil in which her body was wrapped, the foil box, and a bloody photo. In addition, the blood on the pajamas and robe found in Celani's suitcase matched Mrs. Celani's blood type. Celani was therefore indicted for the murder of his mother. But for nineteen years, until June 22, 1995, he was found incompetent to stand trial.

Once found competent, Celani moved to suppress the physical evidence described above, arguing that the initial entry into and, therefore, the ensuing search of his home were illegal under the Fourth and Fourteenth Amendments to the United States Constitution, article I, section 9 of the Texas Constitution, and article 38.23 of the Texas Code of Criminal Procedure. The trial court denied the motion and, based upon the stipulated evidence and the testimony of Dr. John C. Sparks, found Celani not guilty by reason of insanity. On November 29, 1995, Celani was automatically committed to the maximum security unit of the Vernon State Hospital.

### JURISDICTION

▮ The State has not favored this court with a brief on the merits, instead resting solely on its assertion that we are without jurisdiction of Celani's appeal because he was found not guilty by reason of insanity, and thus acquitted, pursuant to article 46.03, section 1(d) of the Texas Code of Criminal Procedure. We disagree.

In Texas, "[a] defendant in any criminal action has the right of appeal under the rules" prescribed by the Code of Criminal Procedure. TEX.CODE CRIM. PROC. ANN. art. 44.02 (Vernon 1979), *repealed in part by*, Act of June 14, 1985, 69th Leg., R.S., ch. 685, § 4, 1985 Tex. Gen. Laws 2473. However, in the absence of a positive legislative enactment, this statutory right of appeal has generally been "restricted to persons convicted of offenses and those denied release under the writ of habeas corpus." *De Silva v. State*, 98 Tex.Crim. 499, 267 S.W. 271, 272 (1924); *cf., e.g., Watson v. State*, 924 S.W.2d 711 (Tex. Crim.App.1996) (until 1987 amendment expressly permitted defendant to appeal deferred adjudication order, order was held unappealable because it was not a final conviction and did not assess punishment). Accordingly, a preliminary finding regarding whether a defendant is competent to stand trial is not appealable until either the defendant is committed pursuant to an order issued after a trial on the merits of the competency issue or the defendant is convicted. *Morales v. State*, 801 S.W.2d 624 (Tex.App.— Dallas 1990), *aff'd*, 830 S.W.2d 139, 140 (Tex. Crim.App.1992) (per curiam); *see also Jackson v. State*, 548 S.W.2d 685, 690 (Tex.Crim. App.1977). The State thus argues that since

Celani stands acquitted by virtue of article 46.03, section 1(d), this court is without jurisdiction to review the trial court's ruling. In this regard, the State relies upon Rules 40(b)(1) and 80(b)(2), Tex.R.App.P., and *Petty v. State,* 800 S.W.2d 582 (Tex.App.—Tyler 1990, no pet.). These authorities do not, however, support the State's position.

Rule 40(b)(1) provides the procedure for perfecting an appeal from a "judgment or other appealable order." Nothing in the rule suggests that a judgment of not guilty by reason of insanity is not an appealable order. Rule 81(b)(2) is likewise inapplicable; it merely states the general rules for dispositions in criminal cases. Moreover, Rule 2, Tex.R.App.P., expressly provides that the rules may not be construed to either expand or limit jurisdiction. The State also relies upon the statement in *Petty* that "[g]enerally, this Court only has jurisdiction to consider an appeal when there has been a judgment of conviction, and an appeal does not lie from the granting or refusing of an interlocutory or preliminary order." *Petty,* 800 S.W.2d at 583. This statement, however, must be read in context, and it is clear the *Petty* Court was concerned with the appealability of a dismissal order and not a judgment finding a defendant not guilty by reason of insanity.

In short, none of the authorities cited by the State address, much less decide, the jurisdictional issue presented. Nor have we found any controlling authority in this State. Indeed, our research indicates the issue has been addressed by only one court in one case—the Connecticut Court of Appeals in *State v. Marzbanian,* 2 Conn. Cir. Ct. 312, 198 A.2d 721 (Conn.Cir.Ct.), *cert. denied,* 151 Conn. 730, 197 A.2d 944 (Conn.1963).

In *Marzbanian,* a fire broke out in the defendant's home, and newspaper photographer Roger Gaudio was dispatched to cover it. *Id.* 198 A.2d at 725. As Gaudio was preparing to take pictures, Marzbanian approached and asked what he was doing. *Id.* After Gaudio briefly explained and resumed his preparations, Marzbanian hit Gaudio in the face, seriously injuring his mouth. *Id.* Marzbanian was charged with disturbing the peace. *Id.* at 723. At trial, however, it was established that Marzbanian suffered from

paranoiac schizophrenia and was under the care of a conservator. *Id.* at 726. The trial court found Marzbanian not guilty by reason of insanity and committed him to a mental care facility. *Id.* at 723. Marzbanian appealed.

On appeal, the State of Connecticut argued that the court was without jurisdiction because an acquittal by reason of insanity was not a "judgment." The court summarily disposed of this argument, holding that "judgment was rendered in this case, as it must be in every case which terminates in a finding after a trial on the facts; and it was the judgment finally as rendered which served as authority for the issuance of a mittimus for the confinement of the defendant in the state hospital." *Id.* at 724.

The State of Connecticut next argued, as the State of Texas does in this case, that the court was without jurisdiction because Marzbanian had been acquitted and not convicted. The Connecticut Court of Appeals disagreed, holding that it had jurisdiction over appeals alleging harmful error during the trial determining insanity at the time of the offense. *Id.* at 725. After noting that even an immediate administrative release would not erase the trial court's judgment, the court stated:

> In a case like this, the shadow of such a judgment, if unjustly reached, may conceivably cause more harm to the defendant's potential employment, social acceptance and future happiness than would a finding of guilt and the imposition of a sentence.

*Id.* The court thus held that Marzbanian was entitled to pursue his appeal. *Id.;* see also *State v. Janney,* 55 Ohio App.2d 257, 380 N.E.2d 753, 755 (Ohio.Ct.App.1977) (Whiteside, J., concurring). We agree with the Connecticut Court of Appeals.

While an order or judgment of not guilty by reason of insanity may not be a conviction, it is nonetheless a judgment, and it is a judgment that bears consequences unlike those resulting from a true acquittal; indeed, the consequences of a judgment of not guilty by reason of insanity can closely resemble the punishment that would ordinarily follow a judgment of conviction. *Cf.* Tex.Code Crim.

PROC.ANN. art. 46.03, § 3(d)(7) (Vernon Supp. 1997) (person acquitted by reason of insanity may be committed to mental hospital or other in-patient or residential facility for a period of time equal to the maximum term provided by law for the crime charged). This is so because, while the defendant has been found not guilty of the crime, because he lacked the requisite mental state, he has nonetheless been found guilty of the charged acts, TEX.CODE CRIM.PROC.ANN. art. 46.03, § 1(c) (Vernon Supp.1997); were this not so, he would have been found not guilty and released. And, as the Connecticut Court of Appeals noted, a judgment finding a defendant guilty of the charged acts, but insane at the time of the charged offense, can be as devastating, if not more so, than a judgment of conviction.

We believe there is yet another reason for exercising jurisdiction in this type of case. It is simply inconceivable to us that a defendant who is sane at the time of the offense is entitled to challenge the fairness of his trial, while a defendant who is found insane at the time of the offense is permanently barred from the same opportunity. Under the State's argument, a defendant's insanity at the time of the offense somehow permits the State to permanently evade appellate review of an unconstitutional search, the fruits of which are used to establish that the defendant committed the charged acts, albeit without the requisite mental state, thus foreclosing the defendant's pursuit of a true acquittal and instead submitting him to the commitment and evaluation procedures detailed in article 46.03. We simply cannot accept this argument as a correct statement of Texas law. A defendant, such as Celani, who contends he was denied a fair trial and has suffered adverse consequences as a result, should not be denied the right to an appeal—the right to pursue a true acquittal—simply because he was insane at the time of the offense. For these reasons, we hold that a judgment finding a defendant not guilty by reason of insanity is an appealable order or judgment.

## MOTION TO SUPPRESS

In his sole point of error, Celani contends the initial entry into the Celani home was nonconsensual and illegal; therefore, Celani argues, the ensuing warrantless search was a violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution, article I, section 9 of the Texas Constitution, and article 38.23 of the Texas Code of Criminal Procedure. We disagree.

### Standard of Review

The ruling on a motion to suppress is subject to an abuse of discretion standard of review. *DuBose v. State*, 915 S.W.2d 493, 497 (Tex.Crim.App.1996). An abuse of discretion occurs only when the trial court "applied an erroneous legal standard, or when no reasonable view of the record could support the trial court's conclusion under the correct law and the facts viewed in the light most favorable to its legal conclusion." *Id.* at 497–98.

### Warrantless Searches

The Fourth Amendment to the United States Constitution and article I, section 9 of the Texas Constitution guarantee the right of the people to be secure against unreasonable searches of their persons, houses, papers, and effects. U.S. CONST. amend. IV; TEX. CONST. art. I, § 9. When evidence is obtained in violation of the Fourth Amendment, it is inadmissible. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914); *see also* TEX. CODE CRIM.PROC.ANN. art. 38.23 (Vernon Supp.1997).

The Fourth Amendment does not, however, bar "warrantless entries and searches when [officers] reasonably believe that a person within is in need of immediate aid...." *Mincey v. Arizona*, 437 U.S. 385, 392, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290 (1978). When an officer can reasonably believe concern over an occupant is genuine, and the likelihood of an injury is founded, the officer may enter a home without a warrant or consent. *See Janicek v. State*, 634 S.W.2d 687, 691 (Tex.Crim.App. [Panel Op.] 1982). And, if a warrantless entry is justified under the emergency doctrine, "the police may

seize any evidence that is in plain view during the course of their legitimate emergency activities." *Mincey,* 437 U.S. at 393, 98 S.Ct. at 2413. Moreover, at the time the Celani home was searched and the challenged evidence seized, "the common law 'exigency rule' allowed ... homicide scene investigations" under the "murder scene exception." *Swink v. State,* 617 S.W.2d 203, 209 (Tex. Crim.App. [Panel Op.] ), *cert. denied,* 454 U.S. 1087, 102 S.Ct. 648, 70 L.Ed.2d 624 (1981) (holding that "murder scene exception" applied when search conducted pre-*Mincey* and trial conducted post-*Mincey* ), *overruled on other grounds, Griffin v. State,* 765 S.W.2d 422, 427 (Tex.Crim.App.1989).

### Analysis

In light of the standard of review, under *Mincey* and *Janicek,* the issue presented by Celani's appeal is whether the record, when viewed in the light most favorable to the trial court's ruling, will support a finding that Officers Anderson and Vargas could reasonably have believed Mrs. Nixon's and Mrs. Gray's concern for Mrs. Celani was genuine and the likelihood of an injury founded. We hold the record in this case supports this conclusion.

The initial call was made by Mrs. Celani's cousin, and her concerns were confirmed by Mrs. Celani's neighbors. None of these women had seen or heard from Mrs. Celani for days, and it was very unusual for her not to contact them regularly or tell them if she left town. The women had tried knocking and leaving notes for Mrs. Celani, but she had not responded. Upon inspecting the exterior of Mrs. Celani's home, the officers learned that her car was still in the garage, a lamp was on, and the front screen door was locked from the inside, while the back door was closed but unlocked. Finally, the officers learned that Mrs. Celani lived with her mentally ill son. It was under these circumstances, "because Mrs. Nixon and Mrs. Gray seemed extremely concerned over [Mrs. Celani's] welfare," that the officers entered the Celani home.

On this record, we hold that the trial judge did not abuse his discretion because he could reasonably have found that the officers' initial entry into the Celani home was justified by Mrs. Celani's cousin's and neighbors' extreme concern over her welfare. As in *Janicek,* what the officers "ultimately did is inherent in the very nature of [their] duties." *Janicek,* 634 S.W.2d at 691. And, as noted above, once inside, the officers were entitled to seize evidence in plain view and encountered while searching the home for a suspect or another body, a legitimate emergency activity. They were likewise entitled to investigate the scene of the homicide under the then-viable "murder scene exception." The trial court thus did not abuse its discretion in denying Celani's motion to suppress. Accordingly, Celani's point of error is overruled, and the trial court's judgment is affirmed.