Opinion issued on January 29, 2004











     





In The
Court of Appeals
For The
First District of Texas




NO. 01-01-01134-CR




MICHAEL ADAM RAUSCHER, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 337th District Court
Harris County, Texas
Trial Court Cause No. 872114




O P I N I O N

          Appellant, Michael Adam Rauscher, pleaded guilty to the state jail felony of
possession of marihuana after the trial court denied his pretrial motion to suppress
evidence. Pursuant to a plea bargain agreement, the trial court assessed appellant’s
punishment at 12 months’ confinement. In three points of error, appellant argues the
trial court erred in denying his motion to suppress evidence on federal and state
constitutional grounds for the warrantless entry into his apartment.
          We affirm.
BACKGROUND
          In March 2001, appellant and his wife, Tiffany Rauscher, were leasing 
Apartment No. E 315 of the Oakwood Apartments, located at 2424 South Voss, in
Houston, Texas. On March 18, 2001, after numerous apartment residents complained
of a foul odor coming from appellant’s apartment, Jennifer Rivera, an Oakwood
Apartments leasing consultant, attempted to contact appellant and his wife by phone. 
When Rivera was unable to make phone contact, she and another leasing consultant
took a master key to appellant’s apartment, then knocked on appellant’s door and
called aloud for a few minutes. When no one responded, Rivera and the other leasing
consultant attempted to use the master key to enter appellant’s apartment; however,
because the locks were changed, they were unsuccessful.


 During a second attempt
a short while later, Rivera noticed white powdery footsteps outside appellant’s door
that she had not noticed the first time she went to appellant’s door. 
          Rivera suspected that someone’s safety may have been in jeopardy when she
arrived at appellant’s door and smelled the foul odor. A former police officer told
Rivera that the odor smelled like a dead body. Rivera understood that there had been
a recent break-up between appellant and his wife. Also, appellant had been seen at
the apartments recently, but appellant’s wife had not.


 A more tenured employee
advised Rivera to call the police and have them enter appellant’s apartment. 
          Rivera, thereafter, contacted the police and informed them of the situation. In
response to a “check on welfare” call, Houston Police Department Officer Zackery
Becker arrived at Oakwood Apartments and located appellant’s apartment. Several
individuals informed Becker about the foul odor coming from the apartment, and that
they were concerned about the resident or residents. Apartment managers told Becker
that appellant and his wife had been heard arguing recently and that since that time,
only appellant had been seen, but not his wife. Becker also smelled the foul odor
coming from appellant’s apartment, but he could not identify the smell. 
          After assessing the situation, Becker believed they were looking for a person. 
Based on his training and experience, Becker felt there was a possibility that
somebody could be dead or injured in the apartment. Baker notified his supervisor,
Sergeant McCardel, and received permission to enter the apartment with back-up.


 
The officers first tried yelling and knocking at appellant’s door. When no one
responded, the officers attempted to break in the door, without success. The officers
then called the apartment complex maintenance staff to assist. Eventually, the
maintenance staff drilled the lock out, and the officers then forced the door open.
          Once the door was opened, the officers entered and searched the apartment
room by room, checking for people. From the doorway of the apartment, Rivera
could see cats and a large volume of cat feces.


 At Rivera’s request that they “make
sure there’s no dead body,” the officers also checked the bathtub and the closet. No
persons were in the apartment, but the officers saw a large number of marihuana
plants in plain view in the apartment. The officers secured the apartment and notified 
HPD narcotics division and Animal Control. No evidence was removed from the
apartment at that time. 
          Based on the fact that Becker observed marihuana plants in plain view during
his entry into appellant’s apartment, a search warrant was obtained. Pursuant to the
warrant, officers re-entered appellant’s apartment and seized the marihuana. The trial
court, after finding that Becker entered appellant’s apartment for the sole purpose of
making a welfare check on the occupants, entered the following conclusions of law:
1) Becker’s initial entry into appellant’s apartment was pursuant to a call for service,
which reasonably created a belief that an emergency existed; 2) Becker’s initial
observations while in the apartment were within the scope of looking for a person;
3) Becker’s observations and recognition of the marihuana did not constitute an
unreasonable search based on the totality of the circumstances; and 4) the marihuana
that was seized after a search warrant was obtained was lawfully seized.
DISCUSSION
1.       Standard of Review
          In reviewing the trial court’s ruling on a motion to suppress evidence, we apply
a bifurcated standard of review, giving “almost total deference to a trial court’s
determination of historic facts” and reviewing de novo the court’s application of the
law of search and seizure. Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App.
2000) (citing Guzman v. State, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997)). If the
issue involves the credibility of a witness, such that the demeanor of the witness is
important, then greater deference will be given to the trial court’s ruling on that issue. 
Guzman, 955 S.W.2d at 89. The amount of deference that we should give to a trial
court’s ruling on a motion to suppress will depend upon whether the trial court is in
a better position to decide the issue before it. Id. If the issue is one of application of
law to facts, and the ultimate resolution of that issue does not turn on an evaluation
of credibility and demeanor of a witness, then we may review that issue de novo. Id.
at 89. Furthermore, we will sustain the trial court’s ruling admitting the evidence if
the ruling is reasonably supported by the record and correct on any theory of law
applicable to the case. Laney v. State, 117 S.W.3d 854, 856 (Tex. Crim. App. 2003)
(citing Willover v. State, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002)). 
2.       The Warrantless Entry Into Appellant’s Residence Was Valid Under The
Emergency Doctrine Exception To The Fourth Amendment’s Warrant
Requirement.

          In points of error one and two, appellant argues that the trial court erred when
it denied his motion to suppress, because, appellant contends, an unidentifiable foul
odor emanating from appellant’s apartment did not justify warrantless entry under any
exception to the Fourth Amendment to the United States Constitution. Here,
appellant contends that an unidentifiable foul odor emanating from appellant’s
apartment did not justify warrantless entry under any exception to the Fourth
Amendment. Specifically, appellant argues that warrantless entry was not justified 
under the emergency doctrine exception, alleging 1) there was no probable cause to
search appellant’s apartment, 2) no one identified a possible source of the foul odor
coming from appellant’s apartment, 3) there was no evidence of any crime or violence
committed by appellant or in appellant’s apartment, and 4) no emergency existed to
justify the warrantless entry into appellant’s apartment. 
          Both the Fourth Amendment to the United States Constitution, as well as
Article I, Section 9 of the Texas Constitution, forbid unreasonable searches and
seizures.


 U.S. Const. amend. IV; Tex. Const. art. I, § 9. Warrantless searches are
per se unreasonable unless they fall under one of a few exceptions. Kelly v. State,
669 S.W.2d 720, 725 (Tex. Crim. App. 1984); Brimage v. State, 918 S.W.2d 466, 500
(Tex. Crim. App. 1996) (plurality op. on reh’g). Under the emergency doctrine
exception, police officers are not barred from making warrantless entries and searches
when they reasonably believe that a person within is in need of immediate aid. 
Mincey v. Arizona, 437 U.S. 385, 392, 98 S.Ct. 2408, 2412 (1978); Janicek v. State,
634 S.W.2d 687, 690-92 (Tex. Crim. App. 1982); see also Laney, 117 S.W.3d at 861
(under the emergency doctrine, the officer has an immediate, reasonable belief that
he or she must act to protect or preserve life or avoid serious injury).


 If the
emergency doctrine applies, the police may seize any evidence that is in plain view
during the course of their legitimate emergency activities. Id. at 862. 
          The burden of proof is on the State to justify the warrantless search of a
residence. Brimage, 918 S.W.2d at 482; Bray v. State, 597 S.W.2d 763, 765 (Tex.
Crim. App.1980). In order to justify the search of a residence under the emergency
doctrine, the State must show 1) that the officers had probable cause to search the
residence, and 2) that obtaining a search warrant was impracticable because the
officers reasonably believed there was an immediate need to act in order to protect
or preserve life or to prevent serious bodily injury. Id; Bray, 597 S.W.2d at 765. The
State is not required to prove an actual emergency existed at the time of the officer’s
warrantless entry. Id. Rather, the State need only show that the facts and
circumstances surrounding the entry and search were such that the officers reasonably
believed that an emergency existed that made obtaining a search warrant
impracticable.


 Id. 
          We use an objective standard of reasonableness in determining whether a
warrantless search is justified under the emergency doctrine. Laney, 117 S.W. 3d at
862 (citing Brimage, 918 S.W.2d at 501). This objective standard looks at the police
officer’s conduct and “takes into account the facts and circumstances known to the
police at the time of the search. Id; see also Bailey v. State,


 1999 WL 144091, *1
(Tex. App.—Houston [1st Dist.] 1999, no pet.) (not designated for publication). 
Furthermore, we look to ensure that the warrantless search is strictly circumscribed
by the exigencies that justify its initiation. Laney, 117 S.W. 3d at 862.
          As the Court of Criminal Appeals explained in Laney, the emergency doctrine
is based on an officer’s reasonable belief in the need to act pursuant to his or her
“community caretaking functions,”


 but its application is limited to the functions of
protecting or preserving life or avoiding serious injury. Id at 861.


 As part of the
police officer’s community caretaking functions to protect and preserve life and
prevent substantial injury, an officer may enter and search a private residence without
a warrant for the limited purpose of serving those functions, when it is objectively
reasonable. Id. at 864. 
          For example, the emergency doctrine has been construed to justify entry into
a residence to try and locate a person who has been reported as missing. Brimage,
918 S.W.2d at 501. (citations omitted); see also Bass v. State, 732 S.W.2d 632, 635
(Tex. Crim. App. 1987) (when concerned relatives reported appellant missing and
invited detective into appellant’s home to establish whether appellant’s body was
inside or appellant had been victim of foul play, the detective’s search for appellant’s
body or signs of foul play was permissible).


 Moreover, the Court of Criminal
Appeals has held that an officer may enter a home without warrant or consent when
the officer can reasonably believe that concern over an occupant is genuine, and the
likelihood of an injury is founded. Janicek, 634 S.W.2d at 691. 
                                                   To illustrate, we discuss Celani v. State, 940 S.W.2d 327 (Tex. App.—San
Antonio 1997, pet. ref’d). In Celani, a concerned cousin asked police to come to the
home in which Celani and his mother lived, because she had not seen nor heard from
either Celani or his mother in several days, and was worried about the mother, Mrs.
Celani. Id. Mrs. Celani’s cousin and two of Mrs. Celani’s neighbors met police at
the home and explained that they had tried knocking on the door and leaving notes
for her, all without response. Id. They further explained that this was very unusual
behavior for Mrs. Celani. Id. They also told officers that Celani was mentally ill and
had been in and out of mental institutions. Id. 
          After speaking with the women, the officers knocked on Celani’s front and side
doors, but there was no response. Id. They then walked around the house, trying all
the doors and windows, eventually finding the back door closed, but unlocked. Id. 
Because Mrs. Celani’s cousin and neighbors seemed extremely concerned for her
welfare, the officers entered the house. Id. Once inside, they found Mrs. Celani lying
dead in the hallway, her head and upper torso covered in aluminum foil. Id. During
a systematic search for a suspect or another body, the officers saw that the walls were
covered in blood, and found bloody men’s clothing. Id. Finding neither a suspect, 
nor another body, the officers called it in. Id. 
          The court concluded that the record supported a finding the officers could have
reasonably believed Mrs. Celani’s cousin’s and neighbors’ concern for her welfare
was genuine and that there was a likelihood of an injury. Id. Accordingly, the court
held that the trial court did not abuse its discretion, because it could reasonably have
found that the officer’s entry into the Celani home was justified by her cousin’s and
neighbors’ extreme concern over her welfare. Id. As in Janicek, the court stated,
what the officers ultimately did is inherent in the very nature of their duties. Id.
(citing Janicek, 634 S.W.2d at 291). 
          We use an objective standard of reasonableness to determine whether a
warrantless entry into appellant’s apartment was justified, taking into account the
information available to Becker at the time. See Brimage, 918 S.W.2d at 501. In this
case, Becker responded to a “check on welfare” call after Rivera contacted police to
report her concerns, including that a foul odor was emanating from appellant’s
apartment, that she had been told by a former police officer that it smelled like a dead
body, that the locks had been changed, and that apartment personnel had been unable
to get into appellant’s apartment. Upon arriving at the scene, Becker smelled a foul
odor coming from appellant’s apartment. Other residents complained to Becker about
the smell, and, expressed concerns regarding the well-being of appellant and his wife. 
Apartment management told Becker that the residents of appellant’s apartment had
been heard arguing, and that since that time, only appellant had been seen, not his
wife. Becker knocked at appellant’s door and yelled loudly, with no response. 
Finally, Rivera urged the officers enter appellant’s apartment and “make sure there’s
no dead bodies.” 
          The trial court concluded that Becker’s initial entry into appellant’s apartment
was pursuant to a call for service that reasonably created a belief that an emergency
existed. The trial court also concluded that, based on the totality of the
circumstances, Becker’s observations and recognition of the marihuana did not
constitute an unreasonable search. We agree. Given the information available to
Becker, it was objectively reasonable for him to believe that a person within
appellant’s apartment was in need of immediate aid. See Brimage, 466 S.W.2d at
501; see also Janicek, 634 S.W.2d at 691 (reasonableness of the emergency entry is
to be judged by the circumstances as they existed at the time the decision was made
to enter rather than being affected by whatever condition is found inside.)
          Appellant correctly points out that Becker could not identify the foul odor
emanating from appellant’s apartment. Neither could Rivera, although she testified
that a former police officer told her it smelled like a dead body. Alternatively,
appellant argues that, even if Becker had claimed that he detected the odor of a
decaying body, there would still not have been a reasonable basis to believe that an
emergency existed.


 We disagree. On these facts, the foul odor emanating from
appellant’s apartment was not the only reason for genuine concern regarding the
welfare of appellant’s wife. As discussed above, Becker was also aware that other
residents had heard appellant and his wife arguing, and his wife had not been seen
since that time. 
          Moreover, the report of a homicide or the existence of circumstances in which
an unnatural death could have occurred can constitute an emergency. Corbett v.
State,


 493 S.W.2d 940, 946-47 (Tex. Crim. App. 1973). In Colburn v. State, for
example, an officer received a call to perform a “welfare check” on a reported
homicide. 966 S.W.2d 511, 519 (Tex. Crim. App. 1998). The officer was informed
that Colburn claimed he had just killed a girl in his apartment and had requested his
neighbor call the police. Id. Colburn also told the neighbor the girl was still in the
apartment. Id. The court reasoned that, although there was reason to believe that the
victim was already dead, a reasonable officer under the cirumstances might have
thought there was a possibility that the victim might still be alive, but seriously
injured. Id. Thus, the court held that the officer’s immediate, warrantless search of
the apartment was justified under the emergency doctrine. Id. Likewise, in this case,
even if he believed the foul odor to be that of a decomposing body, under the
circumstances, Becker could have reasonably believed that appellant’s wife might
still be alive, but in need of immediate emergency aid. See Bray, 597 S.W. at 765
(adjudging that “[o]fficers may enter a building where a “body” has been reported,
for the report of death may be inaccurate and it may be possible to revive the body.”)
(citing Corbett, 493 S.W.2d at 946)).



          We overrule appellant’s first and second points of error.
3.       The Warrantless Entry Into Appellant’s Residence Was Valid Under The
Reasonableness Requirement of Article I, Section 9 of the Texas
Constitution.

          In point of error three, appellant argues that the trial court erred when it denied
his motion to suppress, because, appellant contends, an unidentifiable foul odor
emanating from appellant’s apartment did not justify warrantless entry under an
exception under Article I, Section 9 of the Texas Constitution.


 Although appellant
argues the state constitutional ground as a separate point of error, he makes no
separate argument to that effect. Absent any argument or authority that Article I,
Section 9 provides more protection than the Fourth Amendment or any reason why
we should interpret our constitution differently from the federal constitution, we may
dispose of his points of error by addressing only the federal constitutional grounds. 
See Brimage, 918 S.W.2d at 510 fn. 11 (citing Johnson v. State, 853 S.W.2d 527, 533
(Tex. Crim. App. 1992) (“We decline to pursue appellant’s Texas Constitutional
arguments for him.”)). 
          We overrule appellant’s third point of error.
CONCLUSION
          We affirm the trial court’s judgment.
 
 
                                                                        Sherry Radack
                                                                        Chief Justice
 
Panel consists of Chief Justice Radack and Justices Keyes and Alcala.
Publish. Tex. R. App. P. 47.2(b)