(No. 29633.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* PATRICK FLAHERTY, Plaintiff in Error.

*Opinion filed January 22, 1947—Rehearing denied March 17, 1947.*

ORR, LEWIS & ORR, (WARREN H. ORR, WALLACE W. ORR, and HASKELL F. LAMM, of counsel,) all of Chicago, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and WILLIAM J. TUOHY, State's Attorney, of Chicago, (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, and CLEMENT D. CODY, all of Chicago, of counsel, for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiff in error, Flaherty, hereinafter referred to as the defendant, was convicted in the criminal court of Cook county of the robbery of one Robert Cecil Rumbold. The jury found that he had also, in 1922, been convicted of grand larceny. He was sentenced to the penitentiary for his natural life. He was jointly indicted with others charged with having been participants in the crime, but

secured a separate trial and at the time of his trial in this case his coindictees had not been tried.

It appears that on January 19, 1945, shortly after 8 o'clock in the evening, Robert Cecil Rumbold, caretaker and watchman in charge of the office and vault of the real-estate firm of Edward H. Rumbold, in the city of Chicago, was, while on his way to work, attacked by several men, his keys taken forcibly from him and he was taken to the building and compelled to open the vault and was gagged and bound. The robbers then proceeded with sledge hammers, crowbars, and other tools, to break open 177 safety-deposit boxes, emptied their contents into five large bags which they brought with them, and departed, taking also $35 in cash and a ring of the value of $10 from the safety box of Robert Cecil Rumbold, the watchman. Later on these men, including defendant here, were indicted for burglary and larceny, and on trial were found not guilty of that charge. Thereafter the present indictment, for robbery while armed, was returned against the same defendants, with the exception of one who had died in the interim. The indictment in this case charges that the defendants, while armed, and by force and intimidation, robbed the watchman, Rumbold, of his cash, money and ring, ascribing value thereto, and a large amount of other personal property in his care, custody or control. Flaherty was convicted of this offense.

Before arraignment on the robbery charge the defendant filed a motion to dismiss the indictment, which was, by stipulation, considered a plea of *autrefois acquit*, in bar of prosecution. This plea alleged in substance that the defendant in the prior case had been accused and acquitted of burglary and larceny concerning exactly the same facts, property, time, place and transaction as charged in the present indictment; that the crime is the same as the one previously charged and by a verdict of not guilty in the first case defendant was, in effect, acquitted of the offense

with which he is charged under the present indictment. This plea was denied and the defendant was arraigned. On the trial defendant sought to submit to the jury the question of former jeopardy and this was denied, the court instructing the jury as a matter of law that defendant had not been previously tried for the offense charged in this indictment.

Defendant's counsel assign four grounds for reversal: (1) that his previous trial and acquittal is a bar to the present prosecution; (2) that the State failed to prove the use of a gun or other dangerous weapon; (3) that defendant's previous conviction, 23 years prior to his present one, did not bring him within the scope of the so-called Habitual Criminal Act, and (4) that his conviction should not be allowed to stand because, his counsel say, it rests entirely upon discredited and uncorroborated testimony of confessed and unsentenced accomplices given in expectation of leniency as to their own punishment.

Both the constitution of our State and that of the United States provide that no person shall be twice put in jeopardy for the same offense. This constitutional provision protects any person who has already been tried and acquitted of an offense from being ever again put upon trial and again brought into danger of punishment for the same offense. The protection intended and specifically given is against second jeopardy for the same offense. There is no prohibition, either in the Federal or in our own constitution, against successive prosecutions if the same wrongful act charged constitutes separate and distinct offenses, or if there be two or more different offenses growing out of the same transaction. It has been often said by courts that the words "same offense," as used in the constitutional guaranty against second jeopardy, mean the same offense, and not the same act or transaction. In considering the identity of offenses the question is not

whether the defendant has already been tried for the same act, but whether he has been put in jeopardy for the same offense. A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other. (*Blockburger* v. *United States,* 284 U. S. 299, 76 L. ed. 306; *Gavieres* v. *United States,* 220 U. S. 338, 55 L. ed. 489; *Ebeling* v. *Morgan,* 237 U. S. 625, 59 L. ed. 1151; *Morgan* v. *Devine,* 237 U. S. 632, 59 L. ed. 1153.) The offenses are not the same when there is a distinct element in one which is not included in the other, though both relate to the one transaction. (*Blockburger* v. *United States,* 284 U. S. 299, 76 L. ed. 306.) In such case, a conviction or acquittal of either offense constitutes no bar to a conviction under the other, for the accused would not be twice in jeopardy for one offense. The fact that he may have committed two crimes gives him no immunity from prosecution for either. Before the defense of former jeopardy can be sustained the offense involved must be the same, both in law and in fact. If the offenses are distinct in law, the defense of former jeopardy is not available, regardless of how closely they are connected in point of fact. *Piquett* v. *United States,* 81 Fed. 2d 75, *certiorari* denied 208 U. S. 664, 56 S. Ct. 749; *Spears* v. *People,* 220 Ill. 72.

The indictment here under consideration charged defendant and others with making a felonious assault upon Robert Cecil Rumbold and putting him in great bodily fear and danger of his life, and that they, by force and intimidation, robbed him of $35, one ring of the value of $10, two keys of the value of 25 cents each, and also divers other large sums of money, personal goods and property that were in his care, custody or control. The indictment under which defendant was tried and found not guilty

charged him and others with breaking and entering the real-estate office and safety-deposit vault of Edward Howard Rumbold and stealing the property of Rumbold and numerous other persons named in that indictment, and of some sixty other persons whose names were unknown to the grand jurors, and who were renting safety-deposit boxes at that place.

The burglary and larceny indictment was not one charging robbery of Robert Cecil Rumbold nor the larceny of any property from his person or in his care, custody or control. The test, when a former acquittal is pleaded in bar of a subsequent prosecution, is whether the facts charged in the later indictment would, if found to be true, have justified a conviction under the earlier indictment. If so, the judgment on the earlier indictment is a complete bar to the prosecution under the later one, otherwise not. (*People* v. *Allen,* 368 Ill. 368; *People* v. *Bain,* 358 Ill. 177; *People* v. *Greenspawn,* 346 Ill. 484.) It is clear that the jury, under the first indictment, could not have found the defendant guilty of robbery of Robert Cecil Rumbold, who was not named in that indictment as the owner or as custodian of any of the property stolen.

Indictments for offenses against persons or property must name the person or property injured, if known. This is to enable the defendant to plead either former conviction or acquittal in case of a second prosecution for the same offense. (*People* v. *Allen,* 368 Ill. 368; *People* v. *Clavey,* 355 Ill. 358; *People* v. *Smith,* 341 Ill. 649.) An accused may not be tried for burglarizing the building of any person other than the owner or person entitled to the possession thereof. The substance of one crime cannot be proved by proving the substance of another. *State* v. *Billotto,* 104 Ohio St. 13, 135 N. E. 285.

Robbery is the felonious and violent taking of money, goods, property or other valuable thing from the person

of another or in his care, custody or control, by force and intimidation. The gist of the offense of robbery is the force or intimidation used in taking from the person and against his will, property owned by him or in his care, custody or control. (*People* v. *Kubish,* 357 Ill. 531; *People* v. *Gurdak,* 357 Ill. 516.) Robbery and burglary are separate and distinct offenses. The fact that both crimes resulted from the same transaction and involved the same property is of no consequence. A conviction or acquittal of burglary does not exempt the accused from prosecution and punishment for robbery.

Our conclusion, therefore, is that the trial court did not err in refusing to sustain the plea of *autrefois acquit,* nor did it err in refusing to permit the defendant to submit to the jury the issue raised on this plea of former jeopardy. Such plea, in a case such as this, submitted a question of law, only. *People* v. *Brown,* 354 Ill. 480; *People* v. *Simos,* 345 Ill. 226.

Defendant also argues that there was no proof of actual taking of property from the person of Robert Cecil Rumbold or anyone else, but that all the property stolen came from the Rumbold vault; that while the indictment charged that $35 and one ring were taken from the person of Robert Cecil Rumbold, the proof showed that the money was taken from one of the safety-deposit boxes in the Rumbold vault. This is not a correct statement of the proof. The first count of the indictment charged that property of value was taken from the person of Robert Cecil Rumbold or from his custody. He so testified and there is no denial of that fact. The evidence shows that Robert Cecil Rumbold's cash and ring were taken from his custody or control. The value of money or property taken from the person or from the care, custody or control of the victim is not important in establishing robbery, provided it has some value. (*People* v. *Carpenter,*

315 Ill. 87; *People* v. *Fiereto,* 303 Ill. 186; *People* v. *Clark,* 256 Ill. 14.) This contention is without merit.

Defendant next contends that the evidence fails to establish that a gun was used in the commission of the robbery. Rumbold, the watchman, testified that after he was assaulted he was placed in the rear seat of a car driven by defendant; that his hat was pulled down over his eyes so that he could look only in the direction of the floor; that the man sitting next to him held, below his face, so that he could see the outline of it, what he sufficiently saw to identify as a gun; that though there was no light in the car, the passing of street lights enabled him to see the outline of the gun. Lehey, one of the defendants, testified that nobody had a gun; that he didn't, and he didn't see anybody else have any. Lehey was not in the car in which the watchman was riding and therefore his testimony is negative. Whether the watchman was intimidated and threatened with a gun was a question of fact. The jury heard the evidence and was fully warranted, as we view it, in finding that defendant was armed with a gun.

We come now to the contention that the sentence under the so-called Habitual Criminal Act was not justified; that offenses committed as long as 23 years prior to the present conviction are not within the scope and purview of that act. In support of this contention it is argued that since defendant was not convicted of any offense for a period of 23 years, he is not in any sense a regular, frequent or habitual criminal within the meaning of the so-called Habitual Criminal Act. This argument is based on the contention that under the title of the act, "Punishment of habitual criminals," and under the holding of this court in *People* v. *Langford,* 392 Ill. 584, that the act increases the penalty because defendant is a habitual criminal, it is necessarily implied that the crimes complained of must occur at shorter intervals than twice in 23 years. De-

fendant's counsel cite no authority for this contention but argue that since, under the statute of limitations governing prosecutions for crime, the longest period of limitation within which persons may be prosecuted for crimes, other than those not included in the so-called Habitual Criminal Act, is twenty years, and the period of limitation for prosecution for larceny and robbery is three years after commission of the crime, the General Assembly necessarily intended some reasonable time limit in the application of the so-called Habitual Criminal Act, though no limit is stated in the act.

This court has no power to annex to a statute a provision or condition which the General Assembly did not see fit to impose. (*Illinois Nat. Bank* v. *Gwinn,* 390 Ill. 345.) Nor has it power to modify statutes to meet particular cases. If the statute as enacted seems to operate in certain cases unjustly, or is too harsh or severe, the appeal must be to the General Assembly and not to the court. The so-called Habitual Criminal Act provides, without qualification or limitation as to time, that for any second offense of the character designated in the act, the accused, when indicted and convicted as required by the act, shall be punished by imprisonment in the penitentiary for the full term provided by law for the crime of which he was last convicted. This statute is mandatory. It leaves no discretion to the court or judge, but provides an inflexible rule or standard of punishment. Courts may not consider whether another or lesser punishment might be more appropriate under the circumstances of the particular case. The act does not require that the accused be a regular, frequent offender to render the act applicable. Though the statute is commonly known as the Habitual Criminal Act, the title of the act is, "An Act in relation to the punishment of criminals." (Ill. Rev. Stat. 1945, chap. 38, p. 1251.) The headline "Punishment of habitual crim-

inals" is supplied by the compiler of the statute and forms no part of the title or contents of the act. This contention cannot be sustained.

The final contention is that the verdict rests upon the uncorroborated testimony of confessed accomplices whose sole motive was to secure lenient treatment. The rule is that the testimony of an accomplice, though competent, is to be received with suspicion and acted upon with caution. It is also the rule, however, that a conviction may be based on such testimony uncorroborated if it is of such a character as to convince the jury beyond a reasonable doubt of the guilt of the accused. (*People* v. *Rudnicki*, 394 Ill. 351; *People* v. *Johnston*, 382 Ill. 233; *People* v. *Schaeffer*, 353 Ill. 509.) A conviction will not necessarily be reversed where the State's evidence is that of an accomplice, even though the latter admits that he expects leniency, (*People* v. *Johnston*, 382 Ill. 233,) or has been actually promised leniency. *People* v. *Wagman*, 311 Ill. 330.

It may be further observed, however, that the verdict in this case does not rest alone upon the uncorroborated testimony of accomplices. On the contrary, there is evidence strongly tending to corroborate their story connecting defendant with the robbery, and there is sufficient evidence in the record aside from their testimony to warrant the jury in returning a verdict of guilty. Many facts and circumstances indicative of defendant's guilt appear in the record. His own admissions tend to establish guilt. He admitted that a short time after the robbery he left his home in Chicago for New Orleans, where he remained for some months under an assumed name, later coming to Belleville, in this State, under the alias of Stewart. When arrested he denied his identity and persisted in such denial until his fingerprints were taken. As he was being returned to Chicago, in company with a police officer, he, according to the testimony of that officer, talked freely con-

cerning the offense and his part in it. Immediately upon his return he made a voluntary and detailed statement in the presence of three police officers and a court reporter, admitting the crime. He denied making this statement but the three police officers and the reporter testified that he did. There is no point raised here that the statement was not voluntary. He went with the officers to the scene of the crime and to the basement where the loot was divided, and described fully what took place, and while he testified in his own behalf and denied all participation in the crime and branded as false the testimony of the deputy sheriff and the three police officers and others who testified concerning his admissions and statements, he made no attempt to explain why he immediately left the State under the name of Stewart. We are of the opinion that no error intervened in this respect.

Finding no prejudicial error in the record, the judgment of conviction is affirmed.

*Judgment affirmed.*