SIXTH DIVISION
May 12, 2006

No. 1-04-1266

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No.  98 CR 19040 |
| | ) | |
| DWIGHT HARRISON, | ) | The Honorable |
| | ) | Vincent M. Gaughan, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE FITZGERALD SMITH delivered the opinion of the court:

Following a bench trial, defendant Dwight Harrison (defendant) was found to have committed acts beyond a reasonable doubt which would constitute first degree murder.  Defendant, however, was found not guilty by reason of insanity and confined to the Department of Human Services for inpatient mental health services until June 28, 2028.  On appeal, defendant contends that his trial counsel was ineffective for failing to file a motion to suppress his confession after he was found insane.  He also contends that the State failed to "prove him guilty beyond a reasonable doubt of first degree murder."  He asks that we reverse the "findings that he caused the death of [the victim]" and "that the case be remanded."  For the following reasons, we dismiss defendant's appeal.

The State presented evidence that defendant confessed to killing the victim, Theotrie Archie. Chicago police detectives Thomas Benoit and Jean Romic learned the identity of defendant from the victim's roommate, Noble Foggs, who had observed defendant "stomping" on the victim's throat. The detectives found defendant at his sister's apartment and he agreed to accompany them to the police station for questioning in connection with the victim's death. As they left, defendant's sister, Lita Dixon, handed the detectives a bottle of pills, indicating that defendant needed them to sleep and for a nervous condition. After being read his <u>Miranda</u> rights, defendant initially denied involvement in the victim's death. He then agreed to submit to a polygraph test, which was to be administered the next morning. That morning, defendant was again read his <u>Miranda</u> rights, whereupon he confessed to beating and killing the victim. After detailing the event to Assistant State's Attorney (ASA) Robert Robertson, defendant handwrote his statement indicating the same. While in custody, defendant was never given his medication; however, according to the detectives and ASA Robertson, he did not have trouble understanding or communicating and did not display any bizarre behavior.

Following defendant's not guilty plea, the trial court ordered behavioral examinations and found that defendant was fit to stand trial with medication. On October 1, 1999, defendant filed a motion to quash his arrest and suppress his statement. At the subsequent suppression hearing, the trial court heard testimony from Detectives Benoit and Romic, ASA Robertson, Lita Dixon, defendant's attorney Charles Pinkston and psychiatrist Dr. Roni Selzberg. Dr. Selzberg was ordered by the court to evaluate defendant and render opinions regarding his mental capacity. Dr. Selzberg

No. 1-04-1266

was unable to opine whether defendant intelligently waived his <u>Miranda</u> rights because she could not date her impressions back to the time of his arrest. The trial court ultimately granted defendant's motion to suppress, and the State appealed. After thoroughly reviewing the underlying facts of the case, the reviewing court reversed the trial court's suppression order finding that, based on the totality of the circumstances, defendant's confession was voluntary. See <u>People v. Harrison</u>, No. 1-00-2279, slip op. at 7 (September 27, 2001) (unpublished order under Supreme Court Rule 23). Specifically, that court found:

> "The ultimate question is whether the absence of defendant's medication, when considered with the totality of the other circumstances, rendered defendant's confession involuntary. [Citation.]
>
> At the time of his confession, defendant was 20 years old and of low average to average intellectual functioning. He was admonished of his <u>Miranda</u> rights on at least five occasions, indicating that he understood them. Each time the detectives and the ASA had contact with defendant he appeared to understand them, responded appropriately to their questions, and was coherent. Dr. Seltzberg testified that defendant had no form of thought disorder and had the intellectual capacity to understand the <u>Miranda</u> warnings.
>
> Defendant's behavior did not indicate that he was in need of medication, nor did he ever ask for medication.

No. 1-04-1266

> While in custody he displayed none of the symptoms Dr.
> Seltzberg testified he would likely exhibit if he was not
> medicated and was having a mental decomposition.
> Defendant's sister stated that when she saw defendant at
> the police station[,] he was able to answer her questions and
> explain what had happened. Although defendant was in
> police custody for 26 hours before he confessed, he was
> only questioned once during that time. He was fed and
> when given the opportunity to speak alone with the ASA[,
> defendant] did not complain of mistreatment." Harrison, slip
> op. at 6-7.

On January 30, 2003, defense counsel renewed his motion to suppress, and the trial court "reopened the motion" over the State's collateral estoppel objection. On July 1, 2003, however, defendant withdrew his renewed motion to suppress.

At trial, the parties stipulated to the testimony of Detective Benoit, Detective Romic and ASA Robertson, and also stipulated to defendant's handwritten statement. Noble Foggs testified that, on June 9, 1998, he was in his apartment when he heard "some struggling sounds" in the hall. Foggs opened his door and saw defendant stomping on the victim's throat as he lay motionless on the ground. Foggs said "don't kill him" and returned to his apartment. Foggs admitted that he had been drinking and using drugs that night and that he initially refused to speak to police officers during their investigation.

The parties further stipulated that the victim's cause of death was due to multiple

- 4 -

injuries and blunt force trauma. Both parties presented stipulated testimony relating to defendant's mental capacity. Dr. Seltzberg opined that, within a reasonable degree of psychiatric certainty, defendant was legally insane at the time of the offense. Dr. Markos opined that, within a reasonable degree of psychiatric certainty, defendant suffered from paranoid-type schizophrenia, which caused him to lack the "substantial capacity to appreciate the criminality of his act or to conform his behavior with the requirements of the law." Dr. Carl Wahlstrom, Jr., concluded that neither he nor any other medical professional could render an opinion as to defendant's sanity because defendant could not recall the events of the crime.

The trial court found that the State proved beyond a reasonable doubt that defendant committed acts which would constitute first degree murder. However, it also found that the defense proved by clear and convincing evidence that defendant was insane at the time of the offense and, therefore, was not guilty by reason of insanity. The trial court subsequently ordered his evaluation. At a hearing on March 19, 2004, the court found that he was in need of mental health services on an inpatient basis. Moreover, it stated that "[t]he maximum sentence the defendant would be required to serve is 60 years from June 22, 1998, the date originally taken into custody, credit for 2,097 days." The court ordered defendant to the Department of Human Services for treatment until June 28, 2028, "unless the acquitee is released early pursuant to 730 ILCS 5/5-2-4(d) or (l)." This timely appeal followed.

ANALYSIS

As a threshold matter, the State maintains that defendant's contentions on appeal are moot and that we lack jurisdiction over this cause. See In re Andrea F., 208

No. 1-04-1266

Ill. 2d 148, 156 (2003) (finding that reviewing courts generally do not decide moot questions, which are those that present no actual controversy or existing issues and relief cannot be granted). More specifically, the State contends that, because defendant was found not guilty by reason of insanity, he was effectively acquitted and we cannot grant the relief which he seeks here, which is reversal and remand of the verdict. As a result, the State asserts, if we granted the relief requested, defendant would be exposed to another trial in violation of double jeopardy. See People ex rel. Daley v. Crilly, 108 Ill. 2d 301, 312-13 (1985). In response, defendant argues that our court has jurisdiction and double jeopardy is not involved because his not guilty by reason of insanity (NGRI) verdict does not amount to an acquittal, especially since he was not "set free." He contends that, by virtue of the trial court's finding that the State met its burden beyond a reasonable doubt, he was necessarily found guilty and he has a liberty interest that can be cured by our reversal of this cause or remand to review his counsel's actions and the sufficiency of the evidence presented. We agree with the State and conclude that we cannot address defendant's appeal.

Simply put, under our system of law, an NGRI verdict is, in all form and substance, an acquittal. An "acquittal" is defined as the " '*release, absolution or discharge* from an obligation, *liability*, or engagement.' " (Emphasis added.) People v. Thon, 319 Ill. App. 3d 855, 863 (2001), quoting Black's Law Dictionary 25 (6th ed. 1990). Throughout our legal history, our nation's courts, as well as those of our own state, have made clear that we cannot punish or hold accountable one upon whom we cannot impose blame. See, *e.g.*, United States v. Lyons, 739 F.2d 994 (5th Cir. 1984) (Rubin, J., dissenting); Hopps v. People, 31 Ill. 385 (1863); People v. Teran, 353 Ill.

- 6 -

App. 3d 720 (2004). This is the essence of the insanity defense: our collective conscience has deemed it unjust to punish an individual who, because he is mentally ill, does not understand the nature or quality of his conduct. See Lyons, 739 F.2d at 995 (we cannot punish where we cannot impose blame); Teran, 353 Ill. App. 3d at 730 (our legislature has long recognized that those who lack substantial capacity to appreciate criminality of their conduct should not be prosecuted in same manner as those who have this capacity); see, *e.g.*, Hopps, 31 Ill. 385 (person affected by "insanity" is not fit for punishment). In direct contrast to this, a verdict of guilty is dependent upon the concept of responsibility. See Lyons, 739 F.2d at 995; see, *e.g.*, Hopps, 31 Ill. 385 (a crime consists of the union of an act and a purposeful intention; it is this combination which constitutes guilt). It focuses on the punishment of an individual for his "vicious will"--his free choice to do wrong. See Lyons, 739 F.2d at 995. It is this choice that we punish, more so than the resulting criminal act. See Lyons, 739 F.2d at 994 (guilt involves more than a factual determination that the defendant did the act; he must also be blameworthy); see, *e.g.*, Hopps, 31 Ill. 385 (crime cannot be established without sound mind). Ultimately, then, a successful insanity defense and a guilty verdict are mutually exclusive: a defendant found to be insane at the time of the crime's commission cannot be "guilty" because, pursuant to his mental condition, he cannot make an effective choice regarding his behavior. See Lyons, 739 F.2d at 995; see, *e.g.*, Hopps, 31 Ill. 385 (sanity is guilt and insanity is innocence). Therefore, without culpable responsibility, guilt cannot attach and the result is an acquittal. See Lyons, 739 F.2d at 995 ("[a]n acquittal by reason of insanity is a judgment that the defendant is not guilty" (emphasis omitted)); Teran, 353 Ill. App. 3d at 730 (a defendant who succeeds on the

affirmative defense of insanity "escape[s] criminal responsibility"); see, *e.g.*, Hopps, 31 Ill. 385 (any doubt regarding a defendant's sanity must result in acquittal); see also People v. Marshall, 273 Ill. App. 3d 969, 975 (1995) (defendants found not guilty by reason of insanity "have not been convicted of any crime"); People v. Adams, 35 Ill. App. 3d 810, 814 (1976) ("[a] verdict of not guilty due to insanity constitutes a full acquittal").

An NGRI verdict, then, is equivalent to an acquittal. It is strictly a finding that the defendant is not guilty, in the same manner as any other acquittal which renders a defendant discharged from any liability as, for example, when a defendant receives a directed verdict, when a mistrial is declared and the defendant is not prosecuted again, or when a jury for whatever reason determines that the defendant should be absolved from any obligation related to the alleged crime. Merely because the reason behind a defendant's release from responsibility is a successful claim of insanity should not produce a different outcome; after all, the effect is the same since the defendant has avoided liability. See, *e.g.*, Adams, 35 Ill. App. 3d at 814 (a defendant acquitted due to insanity "is entitled to all the protection and constitutional rights as if acquitted on any other ground"). As such, it is imperative to note perhaps the most basic tenant of our federal and state constitutions: a defendant who has been acquitted and declared not guilty may not be retried on the same offense and his verdict cannot be reviewed. See Sanabria v. United States, 437 U.S. 54, 64, 57 L. Ed. 2d 43, 54, 98 S. Ct. 2170, 2179 (1978) ( this is true even if the legal rulings underlying the acquittal were in error); United States v. Martin Linen Supply Co., 430 U.S. 564, 571, 51 L. Ed. 2d 642, 651, 97 S. Ct. 1349, 1355 (1977), relying on United States v. Ball, 163 U.S. 662, 41 L. Ed. 300,

No. 1-04-1266

16 S. Ct. 1192 (1896); accord <u>Crilly</u>, 108 Ill. 2d at 312-13 (discussing and applying these federal cases to our state); see also Ill. Const. 1970, art. VI, § 6 (no appeal may be taken from judgment of acquittal). Therefore, because an NGRI verdict is an acquittal, we cannot review defendant's cause here.

Further support for our conclusion can be found in the language our state legislature chose to employ in the statutes it enacted surrounding NGRI verdicts and in the effects that these statutes have in the treatment of defendants who obtain such verdicts. In dealing with mental disorders, our legislature carved out a special place for insanity verdicts based precisely on the notion of criminal responsibility. That is, a person who, at the time of his conduct, lacked substantial capacity to appreciate the criminality of it "is not criminally responsible." 720 ILCS 5/6-2(a) (West 2002). This is entirely distinct from a person who, at the time of his conduct, "was not insane but was suffering from a mental illness"; this person "is not relieved of criminal responsibility" and "may be found guilty." 720 ILCS 5/6-2(c) (West 2002). While the latter, then, is "no less guilty than one who is guilty and not mentally ill" and must serve the same sentence as one found guilty, the former is entitled to be released from any sort of custody the very moment he has recovered his sanity and is no longer dangerous to society; he is, for all intents and purposes, a free man who does not have to serve any sentence whatsoever. Compare <u>People v. Crews</u>, 122 Ill. 2d 266, 277-78 (1988) (a defendant found "guilty but mentally ill" is forever held to be criminally responsible for his conduct just as one found guilty), with <u>People v. Hampton</u>, 121 Ill. App. 3d 273, 277 (1983) (an NGRI defendant is an acquittee who has not been convicted and therefore should not be punished).

- 9 -

No. 1-04-1266

Our Code of Criminal Procedure confirms this:

"If the defendant is found not guilty by reason of insanity, *the court shall enter a judgment of acquittal * * *.*"  (Emphasis added.)  725 ILCS 5/104-25 (c) (West 2002).

That section then mandates that we turn to section 5-2-4 of the Unified Code of Corrections, which deals with proceedings after "Acquittal by Reason of Insanity."  See 730 ILCS 5/5-2-4 (West 2002).  Once the acquittal is entered, the trial court orders an evaluation by the Department of Human Services and, based upon this evaluation, may very well find the not-guilty defendant "a person not in need of mental health services." 730 ILCS 5/5-2-4(a) (West 2002).  If it does, then, in keeping with the conclusion that an acquitted person has no criminal responsibility, the court must order the defendant "discharged from custody."  730 ILCS 5/5-2-4(a) (West 2002); see also 730 ILCS 5/5-2-4(h) (West 2002) ("[i]f the Court finds that the defendant is no longer in need of mental health services it shall order the facility director to discharge the defendant").  Consequently, even though a defendant with an NGRI verdict may be detained for involuntary commitment, he is not serving a "sentence" for a crime and could conceivably spend virtually no time in custody if he is immediately found not to be in need of mental health services.  Those defendants found guilty or guilty but mentally ill do not have this option, since they can never escape the declaration of their guilt.  See, *e.g.*, 720 ILCS 5/6-2 (West 2002).

Ultimately, a defendant who has obtained an NGRI verdict is free.  Although he may be detained for an evaluation or even for a stay in a mental health facility, it is just a matter of time before he is released and discharged forever from custody, as any

acquitted defendant. See People v. Shelton, 281 Ill. App. 3d 1027, 1036 (1996) (insanity acquittee can be held only as long as he is mentally ill). The confinement he may experience does not change the fact that he was found "not guilty" and has been acquitted from all liability; any confinement in this regard is not "punishment" but, rather, treatment and protection. See Jones v. United States, 463 U.S. 354, 368-69, 77 L. Ed. 2d 694, 708, 103 S. Ct. 3043, 3051-52 (1983) ("purpose of commitment following an insanity acquittal" is to treat individual's mental illness and protect him and society; we cannot excuse liability and at the same time punish, for, "[a]s he was not convicted, he may not be punished"); Shelton, 281 Ill. App. 3d at 1035-36 ("[b]ecause [insanity acquittees] have not been convicted of a crime, they may not be punished"); Foucha v. Louisiana, 504 U.S. 71, 80, 118 L. Ed. 2d 437, 448, 112 S. Ct. 1780, 1785 (1992) (same); see also Marshall, 273 Ill. App. 3d at 975.

This is not to say that a defendant who has obtained an NGRI verdict has absolutely no appellate rights following his trial. We do not imply this at all with our holding here. Rather, we recognize several cases where our courts have heard claims from such acquittees. See, *e.g.*, Williams v. Staples, 208 Ill. 2d 480 (2004) (appeal from denial of *habeas* petition after NGRI verdict); People v. Jurisec, 199 Ill. 2d 108 (2002) (review of trial court's commitment determination and calculation of *Theim* date); People v. Pastewski, 164 Ill. 2d 189 (1995) (review of use of "extended term sentencing" in determining insanity acquittee's commitment time); People v. Markwart, 327 Ill. App. 3d 80 (2001) (appeal from trial court's approval of treatment plan); People v. Owens, 269 Ill. App. 3d 152 (1994) (appeal from denial of motion to modify treatment after NGRI finding); People v. White, 165 Ill. App. 3d 249 (1988) (appeal of involuntary commitment

order following NGRI verdict). It must be noted, however, that these cases involved challenges based on the postacquittal process involved in our statutory scheme and not on the review of the propriety of the substantive NGRI determinations. Thus, while an NGRI defendant may state a claim regarding the location of his commitment, how long he is committed for, standards of proof for commitment, the determination of his dangerousness, the details of his treatment process, or the procedures surrounding his discharge, he is foreclosed, by virtue of his acquittal, from challenging the underlying NGRI finding.

A recent and correlative case to the instant one is State v. Baxley, 102 Haw. 130, 73 P.3d 668 (2003). There, the defendant had been charged with attempted assault, terroristic threatening and kidnaping and was acquitted on all charges by reason of insanity after a bench trial. He appealed, contending, in part, that the trial court erred by acquitting him of kidnaping on the ground of insanity because there was insufficient evidence against him on this charge. Upon review, the state supreme court concluded that it lacked jurisdiction to hear the cause. The Baxley court noted that appellate jurisdiction in a criminal case requires that the defendant be "aggrieved": that his substantive rights be affected or prejudiced. See Baxley, 102 Haw. at 133-34, 73 P.3d at 671-72. It reasoned that, because the defendant had not been convicted but, rather, had been found insane, he was effectively acquitted, his rights had not been adversely impacted, and, therefore, he was not aggrieved. See Baxley, 102 Haw. at 133-34, 73 P.3d at 671-72. Since the defendant failed to demonstrate that he had been prejudiced by the acquittal, the Baxley court determined that it did not have jurisdiction to address the substance of his contention on appeal regarding sufficiency of the evidence. See

Baxley, 102 Haw. at 134, 73 P.3d at 672.

Just as the defendant in Baxley, defendant here has not been aggrieved; to the contrary, he has been acquitted by the NGRI verdict and faces no criminal responsibility. Though he may be confined, he is not so because of guilt but, rather, for his and society's safety, pending a conclusion issued by the trial court that he is no longer in need of mental health services. Once that occurs, his literal freedom will accompany his already-guaranteed legal freedom. Defendant raised the issue of insanity at trial--it was he who proposed it and presented supportive evidence--and he won his acquittal from the crime charged on that ground. He cannot be heard to return before our courts, for there is no greater substantive relief we can impart upon him than the freedom from any guilt which he has already received. Accordingly, we have no jurisdiction over him or his cause.

Even were this not so, and even were we to instead review defendant's claims on appeal, we would still conclude that they have no substantive merit and cannot stand in light of the record before us.

Defendant first contends that his trial counsel was ineffective for failing to file a motion to suppress his statement after the trial court determined he was insane. To successfully allege ineffective assistance of counsel, defendant must prove that his counsel's performance fell below an objective standard of reasonableness and prejudiced the defense of his case. See People v. Moore, 356 Ill. App. 3d 117, 121 (2005), citing Strickland v. Washington, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984).

Here, defense counsel filed a pretrial motion to suppress defendant's statement.

No. 1-04-1266

Although the motion to suppress was initially granted by the trial court, the reviewing court reversed the trial court's suppression order because it found that, based on the totality of the circumstances, defendant's confession was voluntary. See Harrison, slip op. at 7.

While a confession by an insane person must be suppressed because it could not be made intentionally, a court may, after considering all of the evidence, determine that a defendant was sane at the time he confessed and that the confession was voluntary. See People v. Lamerson, 190 Ill. App. 3d 52 (1989) (rejecting psychologist's opinion that the defendant was insane at the time of statement and finding that, based on the testimony of two police officers, he understood Miranda warnings and voluntarily made statement).

In the instant case, on appeal from the trial court's suppression order, the reviewing court thoroughly analyzed the circumstances surrounding defendant's confession and determined that it was voluntary. See Harrison, slip op. at 7. Unlike the psychiatrist in Lamerson, Dr. Seltzberg was unable to render an opinion regarding whether defendant intelligently waived his Miranda rights at the time of his confession. Moreover, Dr. Selzberg's testimony, coupled with that of the detectives and ASA Robertson, demonstrated that defendant's confession was voluntary. Defendant maintains that the trial court's insanity finding contradicts the reviewing court's assessment of his intellectual functioning as "low average to average." However, defendant fails to cite any authority to support his contention. We are not persuaded by his argument, especially since the reviewing court clearly considered numerous factors in making its determination, none of which was dispositive on its own. See People v.

- 14 -

Gilliam, 172 Ill. 2d 484, 500 (1996). Accordingly, defendant has not demonstrated the necessary prejudice to support a claim of ineffective assistance of counsel.

Defendant next contends that the State failed to prove he committed acts constituting first degree murder beyond a reasonable doubt. When reviewing the sufficiency of the evidence, it is necessary to determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) Jackson v. Virginia, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979). It is within the province of the trial court to properly assess the credibility of witnesses, determine the appropriate weight of the testimony and resolve conflicts or inconsistencies in the evidence. See People v. Evans, 209 Ill. 2d 194, 211 (2004). Therefore, we will not retry a defendant or substitute our judgment for that of the trial court. See Evans, 209 Ill. 2d at 209.

Defendant claims that the evidence was insufficient to support his guilt because his confession should have been suppressed and Foggs' testimony was unreliable. Because we have already determined that defendant's confession was properly considered by the trial court, we turn to Foggs' testimony. Defendant attacks Foggs' testimony on the bases of "observational difficulties," "inconsistencies," and a "motive to lie." Specifically, he maintains that Foggs' testimony was flawed because Foggs observed very little of the underlying incident and was intoxicated at the time; his statements were inconsistent with Detective Benoit's testimony; and he incriminated defendant only after having taken a lie detector test. Defendant's attacks, however, go only to the credibility of Foggs' testimony, which was properly assessed by the trial

No. 1-04-1266

court. See <u>Evans</u>, 209 Ill. 2d at 211. Moreover, the trial court was the proper forum for determining what weight to give Foggs' testimony and for resolving any inconsistencies within it or among the other witnesses' testimonies presented at trial. See <u>Evans</u>, 209 Ill. 2d at 211. Again, we will not substitute our judgment in this regard for that of the trial court, especially when we are unaware what weight, if any, the trial court placed on Foggs' testimony. See <u>Evans</u>, 209 Ill. 2d at 209. Therefore, we conclude that there was sufficient evidence for the trial court to find that defendant committed acts constituting first degree murder beyond a reasonable doubt.

CONCLUSION

Accordingly, for all the foregoing reasons, we dismiss defendant's appeal.

Appeal dismissed.

McNULTY, P.J., and TULLY, J., concur.