Docket No. 102859.

**IN THE**

**SUPREME COURT**

**OF**

**THE STATE OF ILLINOIS**

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. DWIGHT HARRISON, Appellant.

*Opinion filed October 18, 2007.*

JUSTICE KILBRIDE delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices Fitzgerald, Garman, and Karmeier concurred in the judgment and opinion.

Justice Burke specially concurred, with opinion, joined by Justice Freeman.

**OPINION**

Dwight Harrison was charged in the Cook County circuit court with two counts of first degree murder for the July 9, 1998, beating death of Theotrie Archie. He pleaded not guilty and raised the defense of insanity. Following a bench trial, he was adjudicated not guilty by reason of insanity (NGRI).

After a hearing, he was found in need of inpatient mental-health services and committed to the custody of the Department of Human Services. He appealed, contending that his trial counsel was ineffective for failing to move to suppress defendant's confession after the court found him insane at the time of the offense. He also contended the

evidence at trial was insufficient to establish his guilt beyond a reasonable doubt. The appellate court dismissed the appeal, holding that the trial court judgment was an acquittal for all purposes and that a reviewing court could not grant any substantive relief greater than the freedom from guilt established by the acquittal. 366 Ill. App. 3d 210, 218. This court allowed defendant's petition for leave to appeal (210 Ill. 2d R. 315), and we now affirm the appellate court judgment.

BACKGROUND

Theotrie Archie was beaten to death in the hallway outside his Chicago apartment. Defendant was identified as the perpetrator by Noble Foggs, a former roommate of Archie, who saw defendant beating the victim. Chicago Police Detectives Thomas Benoit and Jean Romic found defendant at his sister's apartment. Defendant agreed to accompany them to the police station, where he was given a *Miranda* warning before he was interviewed. Initially, he denied any responsibility for Archie's murder and agreed to take a polygraph examination the following morning. Shortly after defendant entered the examination room, the polygraph examiner told detectives defendant wanted to talk to them. Following another *Miranda* warning, defendant confessed to the murder.

 Assistant State's Attorney Robert Robertson then arrived, introduced himself, told defendant he was a prosecutor and not a defense lawyer, and again gave defendant a *Miranda* warning. Robertson allowed defendant to have a cigarette and use the washroom. Defendant then acknowledged to Robertson that he had been treated well and had no complaints about his treatment. Defendant also agreed to give a handwritten statement confessing to the murder. The statement was ultimately admitted as an exhibit at trial.

Defendant entered a not-guilty plea, and the trial court ordered behavioral examinations. Based on those examinations, the court found defendant fit to stand trial with medications. Defendant then filed a motion to quash his arrest and suppress his confession.

At the suppression hearing, the court heard testimony from the detectives, Robertson, defendant's attorney, and a psychiatrist, Dr. Roni Selzberg, who was appointed by the court to evaluate defendant

and render an opinion on his mental capacity. Dr. Selzberg was unable to offer an opinion on whether defendant intelligently waived his *Miranda* rights because she could not date her impressions back to the time of his arrest. The court granted defendant's motion to suppress, and the State appealed.

In an unpublished opinion, the appellate court reversed the suppression order, finding that defendant's confession was voluntary, based on the totality of the circumstances. *People v. Harrison*, 324 Ill. App. 3d 1132 (2001) (unpublished order under Supreme Court Rule 23). This court denied leave to appeal. *People v. Harrison*, 198 Ill. 2d 600 (2002) (table).

On remand, defendant filed an "Amended Motion to Suppress Statements," again claiming defendant's confession was involuntary. In response, the State invoked collateral estoppel, prohibiting reopening the motion to suppress. Although the trial court granted defendant's motion to reopen the suppression motion, defense counsel later withdrew it. Defendant then waived a jury trial, and the cause was tried before the Cook County circuit court.

The State presented only four witnesses. Bobbie Archie, the victim's sister, identified her brother, described his physical stature, and stated that he appeared in good health when he left her apartment on the day of the murder. William Meador of the Chicago police department was the first officer to arrive at the murder scene. He testified he found the victim lying in the fifth-floor hallway, attended by paramedics. Meador was unable to find any eyewitnesses, but he spoke to an unnamed person in the building who identified the victim as Theotrie Archie, who lived in apartment 504.

The State then called Noble Foggs, who testified that he and the victim had been roommates. On the evening of the crime, Foggs and a friend, Shirley Graham, were in his apartment drinking beer and using crack cocaine while listening to music through headphones. When Foggs removed the headphones, he heard a "commotion" in the hallway and opened the door. He saw defendant, whom he recognized from the neighborhood, standing over the victim. Foggs testified that defendant "stomped" on Archie's throat a few times. Foggs said "don't kill him" and retreated inside his apartment fearing defendant might attack him because defendant was a "pretty big guy." Foggs feared for his life because he was smaller and high on crack cocaine.

Foggs admitted to prior felony narcotics convictions and also admitted he did not immediately tell investigating police officers what he saw on the evening of the crime. He did not give the police his account of defendant's actions until he was later interviewed at the police station following a failed polygraph examination.

Transcripts of the suppression hearing testimony of Detectives Benoit and Romic, and Assistant State's Attorney Robertson were admitted by stipulation. Also admitted pursuant to stipulation was the handwritten statement of defendant, confessing to the murder.

Defendant's attorney made an oral motion for a directed finding and waived argument. The motion was denied, and the entire defense case, raising the issue of insanity, was then presented by stipulation. The State stipulated that Drs. Selzberg and Markos, psychiatrists who examined defendant, would testify consistently with their prior reports tendered to the court in 1999, stating that defendant was, at the time of the murder, suffering from schizophrenia and, as a result, unable to appreciate the criminality of his conduct or to conform his behavior with the requirements of law.

The State further stipulated to incorporate and adopt the proceedings at the various motion hearings as part of defendant's case-in-chief. In rebuttal, the State offered the stipulated testimony of Dr. Wahlstrom, who examined defendant in August 1999, and reported that, in his opinion, no mental-health professional could testify as to defendant's state of mind at the time of the crime because of defendant's inability to recall the actual date of the murder or his activities that day.

The trial court found that the State had proved first degree murder, but defendant had established by clear and convincing evidence that he was insane at the time of the offense. The court entered a finding of NGRI and referred defendant to the Department of Human Services (Department) for evaluation.

Two Department psychiatrists evaluated defendant and concluded in their written reports that defendant was in need of inpatient mental-health services. At a hearing to determine whether defendant should be immediately released from custody, the parties stipulated to the admission of the reports. The court committed defendant to the custody of the Department until June 28, 2028, subject to statutory early release based on a finding that he is no longer in need of

inpatient mental-health services. See 730 ILCS 5/5–2–4(d), (e) (West 2002).

Defendant appealed, challenging only the court's predicate finding that he committed first degree murder. He contended that his counsel was ineffective for failing to move to reopen the suppression motion after the court found he was insane at the time of the offense and that the evidence, with his confession excluded from consideration, was insufficient to prove his guilt beyond a reasonable doubt. The State requested that the appeal be dismissed as moot because the trial court's NGRI finding constituted an acquittal and the reviewing court could not grant any relief. The appellate court agreed and dismissed the appeal, holding that "an NGRI verdict is, in all form and substance, an acquittal." 366 Ill. App. 3d at 214.

The appellate court further noted that even if it were to review defendant's claims on appeal, the record indicated they had no substantive merit. The ineffective assistance of counsel claim failed because defendant could not satisfy the prejudice prong of the *Strickland* test. See *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984). The court rejected defendant's claim that the trial court's insanity finding contradicted the appellate court's prior finding that his intellectual functioning was "low average to average," noting that defendant cited no authority and that the court had considered numerous relevant factors in making its determination. Thus, consideration of the statement was proper, and defendant failed to demonstrate the requisite prejudice to establish his ineffective assistance claim. 366 Ill. App. 3d at 218-19.

The appellate court then noted that defendant's statement corroborated the testimony of Noble Foggs and that assessing the credibility of witnesses is an appropriate trial court function. Hence, the court concluded there was sufficient evidence to support the trial court's finding that defendant's acts constituted first degree murder. 366 Ill. App. 3d at 219-20.

This appeal followed.

ANALYSIS

Defendant argues that the appellate court erred in holding that a NGRI judgment is an acquittal for all purposes and, thus, not subject

to appellate review. He further argues that the predicate findings for the charged offense are still subject to appellate review and that the evidence was insufficient to prove his guilt beyond a reasonable doubt.

The question of whether a defendant has been acquitted is, for purposes of appeal, entirely one of law. *Price v. Vincent*, 538 U.S. 634, 639, 155 L. Ed. 2d 877, 885, 123 S. Ct. 1848, 1852 (2003); *People v. Flaherty*, 396 Ill. 304, 311 (1947). Hence, the applicable standard of review in this case is *de novo*. *People v. Breedlove*, 213 Ill. 2d 509, 512 (2004).

Defendant argues that a NGRI judgment is actually a finding of guilty but insane and therefore should not be treated substantively as an acquittal barring appellate review. He contends that the holding in this case conflicts with *People v. Wells*, 294 Ill. App. 3d 405 (1998), where the court considered whether a defendant adjudged NGRI is entitled to expungement of his arrest records pursuant to the Criminal Identification Act. Section 5 of that statute provided that the arrest record of a defendant acquitted of a charge, or released without being convicted, may be expunged. 20 ILCS 2630/5(a) (West 1994). The trial court in *Wells* found that expungement need not be ordered in every case where a person had been acquitted or released because the conviction had been set aside. Rather, the court must balance the public safety interest of the state against the individual needs of the defendant. Accordingly, the trial court denied defendant's petition for expungement.

On review, the appellate court affirmed, holding that the use of the word "may" rather than "shall" in the statute invested the trial court with discretion to allow or deny a petition for expungement. *Wells*, 294 Ill. App. 3d at 409. The court then reviewed the trial court ruling and concluded it was not an abuse of discretion. *Wells*, 294 Ill. App. 3d at 410.

Defendant argues that the *Wells* court held that "a defendant found NGRI is not acquitted of the crime charged because the State must prove the defendant guilty beyond a reasonable doubt of each of the elements of each of the offenses charged before a defendant may be found NGRI. [Citation.]" *Wells*, 294 Ill. App. 3d at 408. Defendant reasons that the need for this predicate finding supports his claim that a NGRI judgment is not an acquittal for purposes of appellate review. We disagree.

The issue in *Wells* was whether the expungement statute applied to a defendant found NGRI. 294 Ill. App. 3d at 407-09. The court held that the defendant could seek relief under the statute because he was released without being convicted. *Wells*, 294 Ill. App. 3d at 408. Hence, the court's statement that a NGRI judgment is not an acquittal is *dicta* because it is not necessary to the disposition of the case. See *Rodriguez v. Sheriff's Merit Comm'n*, 218 Ill. 2d 342, 356 (2006). Further, the court's observation is unsupported by citation to authority, and we do not find it persuasive.

Here, the appellate court noted that an "acquittal" is defined as the " ' "release, absolution or discharge from an obligation, liability, or engagement." ' " 366 Ill. App. 3d at 214, quoting *People v. Thon*, 319 Ill. App. 3d 855, 863 (2001), quoting Black's Law Dictionary 25 (6th ed. 1990). The Code of Criminal Procedure of 1963 (Code) states that, in a bench trial as here, "when the affirmative defense of insanity has been presented during the trial and *acquittal* is based solely upon the defense of insanity, *the court shall enter a finding of not guilty by reason of insanity*." (Emphases added.) 725 ILCS 5/115–3(b) (West 2002). In addition, the Code provides for a discharge hearing to determine the sufficiency of the evidence against a person involuntarily committed for mental-health treatment prior to trial who is unlikely to be fit to stand trial within one year. 725 ILCS 5/104–25(a) (West 2002). If the court finds the defendant NGRI at the discharge hearing, it "*shall enter a judgment of acquittal*." (Emphasis added.) 725 ILCS 5/104–25(c) (West 2002). Even more importantly, the Code of Corrections, entitled "Proceedings *after Acquittal by Reason of Insanity*," requires a defendant found NGRI to be discharged from custody if the trial court determines there is no need for mental-health services. (Emphasis added.) 730 ILCS 5/5–2–4(a) (West 2002).

A finding of NGRI is substantively different from a finding of guilty but mentally ill (GBMI). The Code of Criminal Procedure provides that a person who, at the time of the offense, "was not insane but was suffering from a mental illness, is not relieved of criminal responsibility *** and may be found guilty but mentally ill." 720 ILCS 5/6–2(c) (West 2002). This court has held that a defendant found guilty but mentally ill is "no less guilty than one who is guilty and not mentally ill; unlike insanity, a GBMI finding or plea does not relieve an offender of criminal responsibility for his conduct." *People v.*

*Crews*, 122 Ill. 2d 266, 278 (1988). On the other hand, the legislature has provided that "[a] person is *not criminally responsible* for conduct if at the time of such conduct, as a result of mental disease or mental defect, he lacks substantial capacity to appreciate the criminality of his conduct." (Emphasis added.) 720 ILCS 5/6–2(a) (West 2002).

The language of these statutes demonstrates the significant differences between a finding of GBMI and a finding of NGRI. A defendant found NGRI is completely absolved of the crime and will not face punishment, while a defendant found GBMI remains criminally responsible for the offense. The State's burden of establishing the charges against the NGRI defendant beyond a reasonable doubt is not relevant to our analysis. Even if some error in the underlying proceeding could be shown or if the State did not meet its burden of proof, the defendant's legal status would not change. The defendant would still be acquitted of the charged offenses and would still face the possibility of involuntary commitment for inpatient mental-health treatment.

The legal term "insanity" must be understood in this context. If a person lacks substantial capacity to appreciate the criminality of the conduct, then all criminal responsibility is negated. This court has long recognized this principle. See *People v. Shroyer*, 336 Ill. 324, 326 (1929); *Hopps v. People*, 31 Ill. 385, 392-93 (1863).

In this case, defendant's two-count indictment charged that he acted knowing that his actions created a strong probability of death or great bodily harm to Theotrie Archie in violation of section 9–1(a)(2) of the Code (720 ILCS 5/9–1(a)(2) (West 2002)), and that he intentionally or knowingly beat Archie with his feet in violation of section 9–1(a)(1) of the Code (720 ILCS 5/9–1(a)(1) (West 2002)). The finding of NGRI is incompatible with guilt of the crime charged because the trial court expressly found he was unable to appreciate the criminality of his conduct. Accordingly, defendant's argument that a NGRI judgment is really a finding of "guilty but insane" is totally unsupported by the relevant statutory provisions and case law.

Nonetheless, defendant also argues that although the NGRI judgment is not a conviction, he is still aggrieved in this case. He asserts that his involuntary commitment for up to 28 years affects a substantial liberty interest. This court has recognized that "[i]t is well

settled that detention of an individual at a mental health care facility implicates a substantial liberty interest." *Radazewski v. Cawley*, 159 Ill. 2d 372, 378 (1994). Further, if findings that defendant committed the offense of first degree murder are reversed but he is still found in need of mental-health treatment, his care could be provided with fewer restrictions and more alternative treatment options, because as a nonmurderer, the question of his danger to himself or others would be viewed differently. Thus, defendant argues the appellate court's conclusion that he is not aggrieved by the NGRI judgment is unsupported. Accordingly, he contends the issue of guilt is not moot and is subject to appellate review.

Defendant points to decisions from Texas, Connecticut, and Louisiana supporting the exercise of appellate jurisdiction in cases similar to this one. See *Louisiana v. Branch*, 759 So. 2d 31 (La. 2000); *Celani v. State of Texas*, 940 S.W.2d 327 (Tex. App. 1997); *Connecticut v. Marzbanian*, 198 A.2d 721 (Conn. App. 1963). The State acknowledges those holdings, but notes that, unlike Illinois, not one of those jurisdictions has express constitutional prohibitions against appeals of judgments of acquittal. Our state constitution provides that "after a trial on the merits of a criminal case, there shall be no appeal from a judgment of acquittal." Ill. Const. 1970, art. VI, §6. The express constitutional language does not limit the prohibition to attempted appeals by the State. Thus, if the NGRI judgment is an acquittal, it may not be appealed.

The appellate court cited with approval the analysis in *State v. Baxley*, 102 Haw. 130, 73 P.3d 668 (2003), where Hawaii's supreme court held it lacked jurisdiction to hear the appeal of a defendant acquitted of kidnaping charges on the ground of insanity because appellate jurisdiction in criminal cases requires that the defendant be "aggrieved." 366 Ill. App. 3d at 217-18. The Hawaii court concluded the defendant was not aggrieved because his rights were not adversely affected by his acquittal. See *Baxley*, 102 Haw. at 133-34, 73 P.3d at 671-72.

The appellate court noted that, just as in *Baxley*, defendant was not aggrieved because, as a result of his NGRI acquittal, he faces no criminal responsibility. His confinement does not result from his guilt but is imposed for his own safety and for the safety of society. Once it is determined that his confinement is no longer necessary for those

-9-

purposes, his literal freedom will accompany his already guaranteed freedom from guilt. 366 Ill. App. 3d at 218.

We agree with the appellate court. If defendant is in fact aggrieved by his involuntary commitment, his grievance results from the court's posttrial finding that he was in need of inpatient mental-health services. He chose not to challenge that finding. See 730 ILCS 5/5–2–4(e) (West 2002). The finding is still open to challenge if defendant can demonstrate that he is no longer in need of inpatient services. See 730 ILCS 5/5–2–4(e) (West 2002). Defendant is not aggrieved by the NGRI judgment because its effect is to absolve him of guilt for the charged crime. This absolution is exactly the same as that conferred by any other not-guilty judgment, whether based on the State's failure of proof or establishment of an affirmative defense. Defendant has been freed of any criminal responsibility for the charged crime and thus is acquitted for all purposes.

The Fifth District of our appellate court recently reached a contrary conclusion in *People v. Trotter*, 371 Ill. App. 3d 869 (2007). In that case, the reviewing court rejected the State's argument that it lacked jurisdiction to hear defendant's appeal because she was acquitted of criminal charges by a NGRI verdict. The *Trotter* court disagreed with the appellate court's prior analysis in this case. *Trotter* specifically rejected the *Harrison* court's conclusion that a NGRI verdict is " 'in all form and substance' " an acquittal and, thus, not subject to appellate review. *Trotter*, 371 Ill. App. 3d at 871, quoting 366 Ill. App. 3d at 214.

The court reasoned that the existence of two fundamental differences between a general acquittal and a finding of NGRI are sufficient to confer appellate jurisdiction. *Trotter*, 371 Ill. App. 3d at 871. First, the court noted differences in procedure following a general acquittal and a NGRI finding. In the former circumstance, the case ends. In the latter, the court must first conduct a hearing to determine whether defendant is in need of inpatient mental-health services, and only if defendant is not in need of those services may he be discharged. *Trotter*, 371 Ill. App. 3d at 871-72, citing 730 ILCS 5/5–2–4 (West 2004). The court noted, without explanation, that although the legislature used the term "acquittal" in section 5–2–4, proceedings under that statute are "too far removed from those that

follow a general acquittal to legitimately be equated therewith." *Trotter*, 371 Ill. App. 3d at 872.

Nevertheless, the court first held that while a general acquittal implicates no liberty interest, a NGRI finding can implicate a substantial liberty interest if the trial court finds long-term commitment for mental-health services is necessary. In addition, a defendant found NGRI may continue to bear the inherent stigma associated with the underlying factual allegations. Noting these differences between a general acquittal and a NGRI finding, the court concluded that a defendant who is found NGRI is more "aggrieved" than a defendant who receives a general acquittal. *Trotter*, 371 Ill. App. 3d at 873.

Second, *Trotter* held that a general acquittal and a NGRI finding are fundamentally different because only after it is established that defendant has committed an act constituting a criminal offense does the trier of fact consider the defense of insanity. No similar requirement exists for a general acquittal. Thus, the court concluded that a general acquittal and a NGRI finding are not legal equivalents for all purposes. *Trotter*, 371 Ill. App. 3d at 873.

Further, *Trotter* noted that the position taken by the *Harrison* court would also create "the untenable situation in which one who was found guilty but mentally ill would have the same full appellate rights–including the right to challenge the sufficiency of the evidence–as anyone else convicted of a criminal offense, while one found NGRI would not be able to challenge the facts of the underlying offense." *Trotter*, 371 Ill. App. 3d at 874. Hence, the court concluded that because of these "fundamental differences," a NGRI finding is not the equivalent of a general acquittal as contemplated by the framers of our state constitution. *Trotter*, 371 Ill. App. 3d at 874.

We disagree with the *Trotter* court and now overrule that decision as inconsistent with this opinion. Of course there are differences in procedures following a NGRI acquittal as opposed to a general acquittal. Nonetheless, a finding of NGRI is no less an acquittal. Its effect is to absolve a defendant from guilt, thus falling within the definition of an acquittal. If the framers of our state constitution had intended to allow an exception to its general prohibition of appeals from criminal acquittals, they clearly could have done so. Further, defendant's grievance arises from his postacquittal adjudication rather

than the NGRI judgment. The trial court was required by statute to discharge defendant if it found him not to be in need of mental-health treatment. In addition, defendant is provided a statutory means to raise periodic challenges to his continued confinement (see 730 ILCS 5/5–2–4(e) (West 2006)) and thus is not without a remedy.

## CONCLUSION

For the reasons stated, we hold that a NGRI acquittal is not subject to appellate review. We therefore affirm the judgment of the appellate court.

*Appellate court judgment affirmed.*

JUSTICE BURKE, specially concurring:

I concur with the result reached by the majority because I believe it is mandated by the plain language of the Code of Criminal Procedure (Code) and our constitution. Section 115–3(b) of the Code, which sets forth the various findings a court may make following a bench trial, provides, "when the affirmative defense of insanity has been presented during the trial and acquittal is based solely upon the defense of insanity, the court shall enter a finding of not guilty by reason of insanity." 725 ILCS 5/115–3(b) (West 2004). Article VI, section 6, of our constitution, in turn, provides, "there shall be no appeal from a judgment of acquittal." Ill. Const. 1970, art. VI, §6. Thus, because a not guilty by reason of insanity (NGRI) verdict is clearly an acquittal, no appeal can be taken. Accordingly, the appellate court was correct to conclude that it had no jurisdiction. However, for the following reasons, I am concerned about the consequences of denying a defendant found NGRI the right to challenge the findings of the trier of fact.

A finding of NGRI may be entered following a bench trial only if insanity is the *sole* basis for the trial court's finding that the defendant is not guilty of the crime charged. 725 ILCS 5/115–3(b) (West 2004). In other words, as the majority has explained, the court will have determined that the "act" charged had been proven by the State, but, because the defendant was insane, he lacked the " 'substantial capacity to appreciate the criminality of his conduct' " and thus did not commit

-12-

the "crime." Slip op. at 8, quoting 720 ILCS 5/6–2(a) (West 2002). See also 725 ILCS 5/115–4(j) (West 2004) (following a trial by jury, "a special verdict of not guilty by reason of insanity may be returned instead of a general verdict but such special verdict requires a unanimous finding by the jury that the defendant committed the acts charged but at the time of the commission of those acts the defendant was insane").

Once an NGRI verdict is delivered, the court's actions are governed by section 5–2–4 of the Unified Code of Corrections, which sets out the procedures that must be followed subsequent to an acquittal by reason of insanity. 730 ILCS 5/5–2–4 (West 2006). First, the court must determine whether the Department of Human Services will evaluate the defendant's mental health on either an inpatient or outpatient basis. 730 ILCS 5/5–2–4(a) (West 2006). If a defendant is found to be in need of mental-health services on an outpatient basis, he may be conditionally released. But if a defendant is found to be in need of mental-health services on an inpatient basis, he faces a much different future.

Section 5–2–4(a) of the Code of Corrections mandates that a defendant awaiting or receiving treatment on an inpatient basis is "placed in a secure setting" and is not "permitted outside the facility's housing unit unless escorted or accompanied by personnel of the Department of Human Services or with the prior approval of the Court for unsupervised on-grounds privileges as provided herein." Further, during any transportation "off facility grounds" these defendants "shall be placed in security devices or otherwise secured during the period of transportation." 730 ILCS 5/5–2–4(a) (West 2006). Thus, the distinction between inpatient and outpatient treatment is not a small one. As the majority notes, "[t]his court has recognized that 'it is well settled that detention of an individual at a mental health care facility implicates a substantial liberty interest.' " Slip op. at 8-9, quoting *Radazewski v. Cawley*, 159 Ill. 2d 372, 378 (1994).

A court determining whether a defendant requires mental-health services on an inpatient or outpatient basis must consider whether the defendant is one "who due to mental illness is reasonably expected to inflict serious physical harm upon himself or another and who would benefit from inpatient care or is in need of inpatient care." 730 ILCS

-13-

5/5–2–4(a)(1)(B) (West 2006). In making this determination, the trial court may consider, among other things, "whether the defendant appreciates the harm caused by the defendant to others and the community by *his or her prior conduct that resulted in the finding of not guilty by reason of insanity.*" (Emphasis added.) 730 ILCS 5/5–2–4(g)(1) (West 2006).

It is this latter section that concerns me. The "prior conduct" that determines whether a defendant is in need of mental-health services on an inpatient care basis is the same act that the trial court found defendant committed during the trial proceedings. Under today's ruling, defendant is precluded from challenging that finding. An NGRI defendant thus has no avenue to challenge the sufficiency of the evidence proving he committed the very conduct that will influence the court's decision of whether he must be confined to inpatient treatment immediately following his trial or upon the filing of a challenge to continued inpatient treatment pursuant to section 5–2–4(e) of the Code of Corrections (720 ILCS 5/5–2–4(e) (West 2006)).

I recognize that many defendants asserting an insanity defense admit to committing the acts charged. However, there will also be instances where a defendant will deny committing the act charged and also raise the affirmative defense of insanity. *People v. Ford*, 39 Ill. 2d 318, 321 (1968); see also *People v. Moore*, 147 Ill. App. 3d 881, 885 (1986). It is these situations that illustrate the problem with denying a defendant found NGRI the right to a review of the findings made by the trier of fact.

Because of the serious consequences that follow a finding that an NGRI defendant is in need of mental-health services on an inpatient basis, I urge our legislature to craft a remedy that affords these defendants an opportunity to contest the finding that they committed the act charged.

JUSTICE FREEMAN joins in this special concurrence.